**COMP**
SIGAL CHATTAH, ESQ.
NV Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd. #204
Las Vegas, Nevada 89101
(702) 360-6200
(702) 643-6292
Chattahlaw@gmail.com
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| FURNITURE ROYAL, INC., a Nevada Corporation, | ) ) CASE NO.: ) DEPT.: |
| Plaintiff, | ) |
| vs. | ) **COMPLAINT** ) |
| SCHNADIG INTERNATIONAL CORP. d/b/a CARACOLE , a North Carolina Corporation, WAYFAIR, INC. a Delaware Corporation d/b/a WAYFAIR and PERIGOLD, | ) ) ) ) |
| Defendants. | ) ) |

COMES NOW, Plaintiff, FURNITURE ROYAL, INC., by and thorugh its attorney of record, SIGAL CHATTAH, ESQ. of CHATTAH LAW GROUP, who hereby submits the foregoing Complaint and complains of Defendants and each of them and alleges as follows:

## I.

## <u>JURISDICTION & VENUE</u>

1.       This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 ,and 15 USC §1, 2, under the Sherman act, and the Clayton Act, Sections , 5, and 16, as amended; 15 U.S.C.A. § 13 (Robinson-Patman Antidiscrimination Act of 1936) and in addition the Court has jurisdiction over the Parties based on diversity of citizenship.

2.      This action is not based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or General Accounting Office report, hearing, audit, or investigation, or from the news media.

3.      Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is situated in the State of Nevada.  In addition, for purposes of venue, Defendants are corporations and, as such, are deemed to reside in this judicial district because they are subject to personal jurisdiction in the State of Nevada.

4.      The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants, are unknown to Plaintiff.  Plaintiff is informed and believes and thereon alleges that each of the Defendants is responsible in some manner for the events and happenings herein referred to and damages caused proximately thereby to Plaintiff as herein alleged. That Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of said Defendants, when same have been ascertained by Plaintiff, together with appropriate charging allegations, and to join such Defendants in this action.

## II.

## PARTIES

5.      Plaintiff, FURNITURE ROYAL, INC., is a Nevada Corporation, is a business operating in the State of Nevada, County of Clark.

6.      Defendant, SCHNADIG INTERNATIONAL CORP. d/b/a CARACOLE (hereinafter CARACOLE)  at all times relevant herein was a North Carolina Corporation, doing business in Nevada. SCHNADIG INTERNATIONAL CORP. is a United States Corporation wholly owned by MARKOR FURNITURE INTERNATIONAL CORPORATION, a Chinese Corporation listed on the Shanghai Stock Exchange.

7.      Defendant WAYFAIR, INC. at all times relevant herein is a Delaware Corporation, doing business in Nevada and operating two advertising platforms; to wit: WAYFAIR.COM and PERIGOLD.COM.

### III.

### NATURE OF TRADE AND COMMERCE

8.      There are four phases of the supply chain: commodities, manufacturing, distribution, and retail.

9.      Plaintiff FURNITURE ROYAL, at all times relevant herein was and is a furniture boutique selling high end furniture products. FURNITURE ROYAL sells furniture manufactured by Defendant CARACOLE, in the Las Vegas area.

10.     Defendants CARACOLE are the manufacturers of high style furniture line, offering "Couture" furniture allowing the consumer to custom order pieces according to taste and preference. The furniture industry is nationwide in scope and involves, the manufacture and marketing of such products across the United States of America. The relevant geographic market for furniture products is nationwide in scope.

11.     CARACOLE, as manufacturer sells directly to retailers, such as FURNITURE ROYAL for distribution and retail of Caracole products across the United States of America.

12.     CARACOLE also utilizes advertising platforms such as e-commerce to sell and distribute to consumers directly; specifically, CARACOLE places furniture on website such as PERIGOLD.COM (hereinafter "PERIGOLD") and WAYFAIR.COM (hereinafter "WAYFAIR") an e-commerce advertising site.

13.     PERIGOLD is an ecommerce advertising site that utilizes web based sales on various high end furniture lines such as CARACOLE.

14.     PERIGOLD and WAYFAIR utilize their websites as platforms to advertise and display the furniture sold directly by the manufacturer and purchased by the consumer. When consumers view Caracole products and furniture on the advertsing platforms WAYFAIR and PERIGOLD, the furniture is priced at up to 40% discount below what Caracole Manufacturers Suggested Retail Price ("MSRP"). Both advertising platforms PERIGOLD and WAYFAIR spend millions of dollars annually to advertise these Caracole products, providing a platform for Defendant Caracole to compete with retailers such as FURNITURE ROYAL.

15.     PERIGOLD and WAYFAIR markets and sell Caracole products online for the reduced discount set up by Defendant CARACOLE, directly competing with retailers and dealers.

16.  PERIGOLD, WAYFAIR and CARACOLE, by and through selling Caracole products, make resale price maintenance (RPM) protections obsolete and small business owners such as Plaintiffs herein are undercut and competition is reduced by allowing consumers to simply purchase CARACOLE's product online with PERIGOLD and WAYFAIR acting as the marketing and advertising platform for CARACOLE.

17.     During the time period covered by this Complaint, Defendant has sold and shipped substantial quantities of Caracole furniture in a continuous and uninterrupted flow of interstate commerce to its customers located in other states.

18.     Defendants established and have operated facilities located in Greensboro, North Carolina, and have sold and shipped their furniture in various states of the United States. These furniture orders were shipped directly to the consumer by Defendant CARACOLE, following display on PERIGOLD and WAYFAIR in a continuous and uninterrupted flow of interstate commerce.

19.     Any restraint upon free competition in the manufacture, marketing or sale of furniture by CARACOLE in the United States necessarily and directly restrains and affects interstate commerce in and among the states. Plaintiff is engaged in the business of purchasing and selling CARACOLE furniture products in the State of Nevada, in competition with CARACOLE.

**A.       COURSE OF DEALINGS**

20.     Plaintiff has been purchasing from CARACOLE since March, 2010. During or about  2016, CARACOLE commenced advertising with WAYFAIR.COM. In September 2017, WAYFAIR.COM launched the subsidiary website PERIGOLD.COM as a high end platform to sell CARACOLE products directly to the public.

21.     Defendants CARACOLE breached its express and implied agreements with Plaintiff's business by offering to and agreeing with PERIGOLD and WAYFAIR to sell CARACOLE furniture directly to the consumer. PERIGOLD and WAYFAIR offered their e-commerce websites to CARACOLE so that CARACOLE can sell directly to consumers, bypassing and cutting out dealers and retailers across the United States.

22.     CARACOLE  offered to sell and continues to offer to sell furniture to consumers at prices below retailer pricing on the PERIGOLD and WAYFAIR platform ("favored customers"), including FURNITURE ROYAL, and below the price at which FURNITURE ROYAL can sell to the consumer. FURNITURE ROYAL is and remains to be excluded from the market.

23.     FURNITURE ROYAL's customers have used the Furniture Royal store as an "Exhibit Room" solely to see the product in person and then purchase directly from CARACOLE on websites such as PERIGOLD and WAYFAIR, whereby orders are directly shipped from CARACOLE to the customers location and delivery address.

**B.** **ANTITRUST OFFENSE CHARGED**

24.     During the period commencing 2016 and continuing up to and including the present time Defendant CARACOLE, has sold directly to consumers, using WAYFAIR and PERIGOLD as advertising platforms through ecommerce at a significantly reduced price, unlawfully fixing the price of their goods and unfairly competing with retailers across the Nation. These customers have been treated as "favored customers" by purchasing directly from the manufacturer Caracole.

25.     Defendants engaged in  the conduct alleged above with the specific intent to compete with retailers, such as Plaintiff and sell Caracole furniture products at a reduced price.

26.     Defendant CARACOLE has uinlawfully and willfully abused, exercised and misused the power in violation of Section 2(a) of the Robinson Patman Act, 15 U.S.C.A. § 13, as amended.

27.     Defendant CARACOLE's abuse, exercise and misuse of the PERIGOLD and WAYFAIR ecommerce website to compete with retailers in sells and manufactures for, have had the following unlawful purposes and objectives, inter alia:

(a)     To attempt to exclude competition in the relevant markets constsiting of Nevada and other states of the United States;

(b)  to foreclose, restrain and exclude competition, including price competition, among sellers of Caracole furniture.

(c) to foreclose and exclude Plaintiff as a price competitor;

(d) to foreclose, restrain and exclude competition, including price competition, among manufacturers and dealers of Caracole furniture;

(e)     to impose territorial, geographic and product restrictions and limitations on Plaintiff and other sellers of Caracole furniture and to foreclose, restrain and exclude competition between them; and

(f)       to deprive Plaintiff and other sellers of an opportunity to engage in the business of selling furniture in a free, open and competitive market.

28.       In furtherance of the unlawful purposes and objectives, as described above, Defendant CARACOLE engaged in and carried out the following unlawful acts and conduct, inter alia:

(a)       Defendant CARACOLE provided favored customers with 40% discounts below MSRP, *i.e.*, reduced rates on their furniture when purchased through e-commerce platforms PERIGOLD and WAYFAIR (i.e. "favored customers").

(b)       Defendant CARACOLE sold furniture directly to customers, bypassing its dealer network, and selling pieces of furniture at prices below its best dealer price, in order to lock in the selected customer with using such ecommerce platforms.

(c)       Defendant abused, exercised and misused the exclusive manufacturing power as described above;

(d)       Defendant attempted to enlarge and expand its exclusive and monopoly power, as described above, and to acquire, exercise and, and to exclude competition in the relevant markets consisting of the State of Nevada and other States in the United States.

(e)       Defendants combined and conspired to and did foreclose and exclude Plaintiff as a competitor, including as a price competitor, by selling directly to customers, and competing directly with Plaintiff as retailer and dealer of Caracole products. Therefore Plaintiff was restrained and excluded from effectively competing in the sale of Caracole products in the relevant market was foreclosed, restrained and excluded.

(f)       Defendants deprived Plaintiff and other furniture retailers of an opportunity to engage in the business of selling Caracole products in a a free, open and competitive market, thereby preventing the distribution of furniture into the market place in an efficiently and competitive manner.

## C.  EFFECTS ON COMPETITION AND THE MARKET

29.     CARACOLE's abusive exercise of competition with retailers and dealers and misuse of power, have substantially excluded, foreclosed and lessened competition. There is an attendant dangerous probability of success that Plaintiff and other retailers similialy situated, will be excluded as a competitor in the following respects, inter alia:

(a)     Defendant's acts and conduct of selling directly to customers, at substantially reduced prices has had the effect of restraining and foreclosing Defendant's competitiors, from competing and increasing their market shares, and has enabled Defendant to maintain or increase its share of the market.

(b)     Defendant's acts and conduct of selling directly to customers, as alleged above, has had the effect of restraining and foreclosing retailers and dealers of Caracole products, from competing with Defendants for the reason that these retailers and dealers must purchase Defendant's furniture at prices which exceed Defendant's direct sale prices to customer's on WAYFAIR and PERIGOLD platform, and has had the  the additional effect of reducing sales and market shares of retailers and dealers of Caracole products.

(c)     Defendant's acts of selling directly to customers ("Favored Customers") at a significantly reduced prices through WAYFAIR or PERIGOLD, has had the effect of "Nonfavored Customers" being forced to pay higher prices for Caracole products at retail locations. As a consequence, competition between 'favored' and "Nonfavored" customers of Caracole products has been reduced and foreclosed. This has had the effect of increasing the market share of "favored customers", and has prevented "non-favored customers" from competing efficiently with favored purchasers.

(d)     Competition, including price competition among Defendant CARACOLE and retailers and dealers of Caracole products has been substantially excluded, foreclosed and lessened;

(e)     Retailers and dealers of Caracole products have been denied the benefits of a free, competitive and open market and choice in the market place among places to purchase Caracole products has been restrained, foreclosed and eliminated.

**D.    INJURY TO PLAINTIFF:**

30.     CARACOLE's actions, abuse, excise of price fixingand attempt to price fix, have directly and proximately caused inuries to Plaintiff's business  and property, and will continue to cause substantial and immediate injuries to Plaintiff's business and property in the following respects; inter alia:

(a)     Plaintiff has been restrained, foreclosed and excluded as a competitor, including as a price competitor, from the market of selling Caracole products;

(b)     Plaintiff has been coerced and required to withdraw from competition and sales of Caracole products;

(c)     Plaintiff has been deprived of an opportunity to engage in the business of selling Caracole products in a free, open and competitive market;

(d)     Plaintiff has lost business, customers, sales, income and profits;

(e)     Plaintiff has suffered injuries to its business, property and business organization built up over many years, involving substantial investment and having substantial value;

(f)     Plaintiff has suffered injuries to its standing the market place and business community and to its business reputation.

31.     Plaintiff is engaged in the business of purchasing and selling Caracole products in the State of Nevada and Defendants have engaged in price discrimination by placing furniture on

advertising platforms such as Wayfair and Perigold, and selling same at a reduced manufacture price.

32.     This type of price predation by Defendants is an attempt to wipe out its smaller competitors by using its deeper pockets to undercut the competitors' prices, thereby taking away their customers.

## IV.

## GENERAL ALLEGATIONS

32.     Plaintiff incorporates by this reference the allegations contained in all of the preceding paragraphs as if fully set forth herein.

33.     CARACOLE manufactures furniture, which are purchased upstream by companies such as FURNITURE ROYAL to sell to the public.

34.     CARACOLE also advertises on internet platforms such as Wayfair.com, Perigold.com. to sell directly to consumers by placing furniture on these advertising platform sites and is a direct competitor of FURNITURE ROYAL.

35.     CARACOLE uses these internet advertising platforms to sell directly to consumers in direct competition with dealers and retailers like FURNITURE ROYAL.

36.     CARACOLE undercuts retailers by providing a discount through these online platform websites ("favored customers") whereby forcing retailers to discount the product to the conform to the platform sites.

37.     In fact, CARACOLE is extending preferential pricing to customers by using the internet platform sites, despite providing manufactures suggested retail prices (MSRP) to retailers selling CARACOLE products.

38.     Contrary to CARACOLE's assurances that its prices were fixed, CARACOLE was selling directly to consumers at reduced prices by and through online advertising platforms such as Wayfare.com and Perigold.com.

39.     Not only did CARACOLE mislead FURNITURE ROYAL about its pricing, but by duping FURNITURE ROYAL into believing that CARACOLE's prices were fixed, CARACOLE placed FURNITURE ROYAL at a distinct disadvantage against CARACOLE, by allowing customers to purchase off the internet platforms at a discount off the MSRP instead of retailers such as FURNITURE ROYAL.

40.     For example, a customer would see CARACOLE furniture at FURNITURE ROYAL's store in Las Vegas, Nevada and would then purchase it online through an internet platform Defendants Wayfair.com and Perigold.com that was discounted by CARACOLE to compete with retailers.

41.     Not surprisingly, as a result of the secret price collusion between CARACOLE and the internet platforms, Wayfair.com and Perigold.com, CARACOLE is not only competing with Retailers it distributes to but also, is profiting off the ability of customers going to furniture showrooms and seeing the furniture in person, while purchasing it directly from the manufacturer online at a discount.

42.     CARACOLE has an insurmountable advantage over FURNITURE ROYAL by offering special pricing on the furniture since it is being sold directly by the manufacturer on a internet website platform.

43.     At the time of entering into the Agreement to sell Caracole furniture, FURNITURE ROYAL had no knowledge that, CARACOLE was using internet websites to advertise and directy sell  the same furniture at a discount directy to the consumer.

44.     FURNITURE ROYAL realized the CARACOLE was offering preferential pricing, using the internet advertising platforms to directly sell to consumers and undercutting all their retailers.

45.     FURNITURE ROYAL's  suspicion of Defendants' deception was subsequently confirmed as products were being sent directly by the manufacturer to the consumers, and not by the internet websites, used as advertising platforms.

**V.**

**FIRST CLAIM FOR RELIEF**
**(Price Fixing-Horizontal-Violation of 15 U.S.C.A. § 13 )**

**46.**     Plaintiff incorporates by this reference the allegations contained in all of the preceding paragraphs as if fully set forth herein.

**47.**     As noted *supra,* Defendant CARACOLE engages in and transacts a continuous course of business within the State of Nevada and is enaged in selling and shipping substantial quanties of Caracole products in a continuous and uninterrupted flow of interstate commerce to its customers located in other states.

**48.**     Further as noted *supra,* CARACOLE, discriminated in price as between "favored customers", purchasing directly from CARACOLE, by and through e-commerce advertising platforms PERIGOLD and WAYFAIR; and "non-favored customers" whom purchased from retailers such as Plaintiff.

**49.**     That the Caracole products sold to customers directly by Defendant CARACOLE on the e-commerce advertising platforms PERIGOLD and WAYFAIR was at all times relevant herein the same grade and quality of the Caracole products sold to Plaintiff;

**50.**     That the price discrimination had a prohibited effect on competition by Defendant CARACOLE directly competing with retailers and dealers such as Plaintiff.

**51.**     That Plaintiff suffered actual injury to its business or property as a result of the price discrimination in excess if One Million US Dollars, the exact amount which will be shown at trial.

## VI.

### SECOND CLAIM FOR RELIEF
#### (Conspiracy- Defendants)

52.     Plaintiff incorporates by this reference the allegations contained in all of the preceding paragraphs as if fully set forth herein.

53.     As described above, Defendants, by concerted action, intended to place Plaintiff at a significant disadvantage in the sale of Caracole products by themselves selling Caracole products directly to consumers on e-commerce advertising platforms such that Defendant CARACOLE would undercut Plaintiff's pricing.

54.     As a direct and proximate result of Defendants' unlawful conspiracy, Plaintiff has been damaged in excess of One Million United States Dollars, the exact amount to be proved at trial.

55.     Plaintiff alleges upon information and belief that Defendants' actions were done willfully, with the intent to cause injury to Plaintiff, and in conscious disregard of Plaintiff's rights. Defendants, and each of them, are therefore, guilty of malice and oppression, and Plaintiff is entitled to an award of punitive damages appropriate to punish Defendants, and each of them, and to deter others from engaging in similar misconduct.

56.     As a direct and proximate result of the acts and omissions alleged herein, it has become necessary for Plaintiff to retain the services of attorneys to prosecute this Complant, and Plaintiff therefore is entitled to recover its attorneys' fees and costs incurred herein.

# VII.

## THIRD  CLAIM FOR RELIEF
### (ALL DEFENDANTS Violation of  Sherman Act, 15 U.S.C. § 1

57.     During the period beginning at least as early as 2016 and continuing through at least the present time, each of the defendants and co-conspirators engaged in various combinations and conspiracies with other of the  defendants and co-conspirators in unreasonable restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The offenses are likely to recur unless the relief hereinafter prayed for is granted

58.     These combinations and conspiracies consisted of agreements, understandings, and concerted actions to decrease prices on Caracole products and eliminate manufacture suggested retail price.

59.     For the purpose of forming and effectuating these combinations and conspiracies, the  defendants and co-conspirators, through e-commerce advertising platforms, did the following things, among others:

(a) Discriminated between favored and non favored customers

(b) Conspired and colluded to sell Caracole products from the manufacturer directly to the customer, bypassing retailers and dealer pricing;

(c) Excluded competition  in the State of Nevada and other states of the United States;

(d) Combined and conspired to and did foreclose and exclude Plaintiff as a competitor, including a price competitor, by imposing substantially reduced fixed prices;

(e) Deprived Plaintiff and other furniture retailers of an opportunity to engage in the business of selling Caracole products in a free, open and competitive market, thereby

preventing the distribution of Caracole products into the market place in an efficient and competitive manner.

60.     These combinations and conspiracies had the effect of price competition among retailers and defendants for sale of Caracole products has been unreasonably restrained; and consumers have been deprived of the benefits of free and open competition in the sale of Caracole furniture and products.

61.     As a direct and proximate result of Defendants' unlawful conspiracy, Plaintiff has been damaged in excess of One Million US Dollars ,an exact amount to be proved at trial.

62.     Plaintiff alleges upon information and belief that Defendants' actions were done willfully, with the intent to cause injury to Plaintiff, and in conscious disregard of Plaintiff's rights. Defendants, and each of them, are therefore, guilty of malice and oppression, and Plaintiff is entitled to an award of punitive damages appropriate to punish Defendants, and each of them, and to deter others from engaging in similar misconduct.

VIII.

## **FOURTH CLAIM FOR RELIEF**
### **(Fraudulent Misrepresentation )**

63.      Plaintiff incorporates by this reference the allegations contained in all of the preceding paragraphs as if fully set forth herein.

64.     Defendant falsely represented to Plaintiff that it did not offer any special pricing on its furniture to consumers or sell to consumers directly. Specifically, Plaintiffs inquirecd whether there was special pricing and Defendants denied such actions.

65.     Defendants knew or should have known those representations were false.

66.     Defendants intended to induce Plaintiff into continued sale of Caracole products by having a place to showcase Caracole products in a local market.

67.     Plaintiffs justifiably relied on Defendants' representations that its prices were fixed, and that Defendants were not undercutting retailers.

68.     As a result of Defendants's misrepresentations, Plaintiff has suffered financial damage in an amount to be determined at trial, which amount is in excess of One Million US Dollars.

69.     Plaintiff alleges upon information and belief that Defendant's actions were done willfully, with the intent to cause injury to Plaintiff, and in conscious disregard of Plaintiff's rights. Plaintiff is therefore guilty of malice and oppression, and Plaintiff is entitled to an award of punitive damages appropriate to punish Defendants, and to deter others from engaging in similar misconduct.

70.     As a direct and proximate result of the acts and omissions alleged herein, it has become necessary for Plaintiff to retain the services of attorneys to prosecute this action, and Plaintiff therefore is entitled to recover its attorneys' fees and costs incurred herein.

## IX.

### FIFTH CLAIM FOR RELIEF
**(Violation of 15 U.S.C.A. § 13 (Robinson-Patman Antidiscrimination Act of 1936)**

71.     Plaintiff incorporates by this reference the allegations contained in all of the preceding paragraphs as if fully set forth herein.

72.     As alleged herein, Defendants's offering of special pricing to consumers, while declining to extend that special pricing to Plaintiff, in the sale of direct to the consumers of furniture  like grade and quality, constitutes a violation of Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Antidiscrimination Act of 1936, 15 U.S.C.A. § 13(a).

73.     The price discrimination implemented by Defendants gave Defendants a distinct advantage against Plaintiffs in the sale process for each of the furniture sold by CARACOLE.

74.     As a direct and proximate result of Defendants' price fixing, Plaintiff has been damaged in an exact amount to be proved at trial, which amount is in excess of One Million US Dollars.

75.     As a direct and proximate result of the acts and omissions alleged herein, it has become necessary for Plaintiff to retain the services of attorneys to prosecute this action, and Plaintiff therefore is entitled to recover its attorneys' fees and costs incurred herein.

## X.

### SIXTH CLAIM FOR RELIEF
### (Violation of Nevada Unfair Trade Practices Act (NRS 598A.060)

76.     Plaintiff incorporates by reference the allegations contained in all of the preceding paragraphs as if fully set forth herein.

77.     The acts, as described herein, demonstrate that Defendants's repeated sale of furniture to "favored customers" at a lower price than that offerable by Plaintiffs and all other retailers or dealers constitutes unlawful price fixing under NRS 598.060, particularly given Defendants' remain the manufacturer for each of the products.

78.     Defendants's surreptitious offering of lower prices to "favored customer" while falsely assuring Plaintiff and other retailers and dealers, that Defendants offered the same fixed price for all customers constitutes a wrongful restraint of trade.

79.     As a direct and proximate result of Defendants' restraint of trade, Plaintiff has been damaged in excess of One Million US Dollars. in an exact amount to be proved at trial.

80.     As a direct and proximate result of the acts and omissions alleged herein, Plaintiff is entitled an award in the amount of the maximum amount of civil penalties allowed by NRS 598A.210.

81.     As a direct and proximate result of the acts and omissions alleged herein, it has become necessary for Plaintiff to retain the services of attorneys to prosecute this Complaint, and Plaintiff therefore is entitled to recover its attorneys' fees and costs incurred herein.

## XI.

### SEVENTH CLAIM FOR RELIEF
### (Intentional Interference with Prospective Economic/Business Advantage – Defendants)

82.     Plaintiff incorporates by this reference the allegations contained in all of the preceding paragraphs as if fully set forth herein.

83.     During the relevant time periods, Plaintiff had prospective contractual relations with customers that Defendants would designate as "Non-favored" customers for the purchase of Caracole furniture products.

84.     Defendants knew Plaintiff was marketing and selling Caracole furniture products to third party customers.

85.     Defendants knew that, by duping Plaintiffs into believing that Caracole's furniture pricing was the same for Plaintiffs and customers; Plaintiff would be at a significant disadvantage vis-à-vis customers buying directly from e-commerce advertising platforms.

86.     Defendant is liable to Plaintiff for intentionally interfering with Plaintiff's prospective contractual relations with the customers by, among other things, misrepresenting to Plaintiffs that Defendants's pricing was fixed and that it would not offer special pricing to any of its customers, including Plaintiff and its direct competitors.

87.     In fact, Defendants secretly provided customers who purchased directly from CARACOLE through an e-commerce advertising platform with lower pricing, which allowed customers to bypass Plaintiff and retailers like Plaintiff to purchase Caracole products at a substantially reduced price.

88.     Not surprisingly, customers utilize the e-commerce advertising sites to purchase Caracole products online at substantially reduced rates, up to 40 % off the MSRP.

89.     By virtue of Defendants's position as supplier and manufacaturer to Plaintiffs and Defendant's position as a direct competitor to Plaintiff, Defendants knew of Plaintiff's prospective contractual relations with customers of Caracole products and the importance of selling to said customers.

90.     Defendants were not privileged or justified in covering up their price fixing conspiracy that placed Plaintiff at a competitive disadvantage in the sales processes in order to promote their own financial gain to the detriment of Plaintiff's prospective economic relations.

91.     As a result of Defendants' misconduct, actual disruption and harm to Plaintiff's prospective contracts with customers occured.

92.     As a direct result of Defendants' misconduct and the disruption and harm that occurred, Plaintiff has suffered financial damage in an amount to be determined at trial, which amount is in excess of One Million US Dollars.

93.     Plaintiff alleges upon information and belief that the actions of Defendants were done willfully, with the intent to cause injury to Plaintiff, and in conscious disregard of Plaintiff's rights. Defendants, and each of them, are therefore, guilty of malice and oppression, and Plaintiff is entitled to an award of punitive damages appropriate to punish Defendants, and each of them, and to deter others from engaging in similar misconduct.

94.     As a direct and proximate result of the acts and omissions alleged herein, it has become necessary for Plaintiff to retain the services of attorneys to prosecute this action, and Plaintiff therefore is entitled to recover its attorneys' fees and costs incurred herein.

**XII.**

**EIGHTH CLAIM FOR RELIEF**
**(Breach of Contract – Caracole)**

95.     Plaintiff incorporates by this reference the allegations contained in all of the preceding paragraphs as if fully set forth herein.

96.     The Parties entered into an authorized dealer agreement.

97.     Defendant represented and promised to Plaintiff not to compete against Plaintiff with respect to Caracole furniture sold by Plaintiff. This representation and promise became part of the parties' course of dealing and agreement, and was observed by Defendant, to the best of Plaintiff's knowledge until 2016.

98.     Defendant made the above mentioned representations for its own benefit to assure Plaintiff's loyalty as well as to induce Plaintiff's best and extra efforts in performance of the parties' agreement.

99.     Plaintiff's belief upon the above mentioned representations is reflected by the amount of time and expense Plaintiff incurred in selling Caracole products at their retail store.

100.    Plaintiff has complied with all the terms and onligations under the parties entire contract and agreement, course of dealing, industry practices , the parties understandings, and Defendant's representations and promises.

101.    Plaintiff has been damaged by Defendant's breach of entire contract and agreement. Such damages include loss of profits, excessive inventory cost, loss of revenue, deterioration of its business enterprise, and other incidental and consequential damages.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as follows:

1.    Adjudge and decree that Defendant CARACOLE has breached its agreements and contract with Plaintiff

2.    Adjudge and decree that Defendant CARACOLE individually and together with Defendants Perigold and Wayfar, acting in combination and conspiracy, has violated Section 1 of the Sherman Act, 15 USC §1.

3.    For an award of damages in an amount in excess of $10,000.00, the exact amount to be proven at trial;

4.    Issue a permanent order, restraining and enjoining Defendants CARACOLE, WAYFAIR and PERIGOLD its agents and employees, and all persons active in concert or participation who receive actual notice of the injunction and order by personal service or otherwise, from continuing the unlawful acts and conduct,as described above.

5.    For an award in the maximum amount as allowed in NRS 598A.210;

6.    For an award of punitive damages, in an amount to be proven at trial;

7.    For an award of pre-judgment and post-judgment interest on the amounts found owing to Plaintiff, from the date such amount became due, at the highest rate allowed by law, as applicable;

8.    For an award of attorneys' fees pursuant to contract or law, as applicable;

9.      For an award of costs, including without limitation expert witness fees; and

10.     For such other and further relief as to the Court deems just and proper.


Dated this __20th__ day of February, 2018.


                                                CHATTAH LAW GROUP

                                                /s/
                                                _____
                                                SIGAL CHATTAH, ESQ.
                                                NV Bar No.: 8264
                                                CHATTAH LAW GROUP
                                                5875 S. Rainbow Blvd. #204
                                                Las Vegas, Nevada 89101
                                                Chattahlaw@gmail.com
                                                (702) 360-6200
                                                (702) 643-6292
                                                Attorney for Plaintiff