CRAIG NEWBY (NSBN 8591)
LAURA JACOBSEN (NSBN 13699)
MCDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Telephone: (702) 873-4100
Facsimile: (702) 873-9966
cnewby@mcdonaldcarano.com
ljacobsen@mcdonaldcarano.com

*Attorneys for Defendant*
*Schnadig International Corp.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| FURNITURE ROYAL, INC., a Nevada Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SCHNADIG INTERNATIONAL CORP., d/b/a CARACOLE, a North Carolina Corporation, WAYFAIR, INC. a Delaware Corporation d/b/a WAYFAIR and PERIGOLD,<br><br>Defendants. | CASE NO.: 2:18-cv-00318-JCM-CWH<br><br>**SCHNADIG INTERNATIONAL CORP.'S MOTION TO DISMISS COMPLAINT PURSUANT TO FRCP 12(b)(6)**<br><br>**(Oral Argument Requested)** |

Plaintiff Furniture Royal, Inc. ("Furniture Royal") is a local brick-and-mortar furniture retailer, including furniture manufactured by Defendant Schnadig International Corp. d/b/a Caracole ("Schnadig"). Dissatisfied with the growth of online retailing, which has brought consumers better pricing for similar products, Furniture Royal filed claims against Wayfair, Inc. ("Wayfair"), a leading online furniture retailer, and Schnadig for federal antitrust violations and intertwined state law causes of action, seeking damages exceeding $1,000,000. No such other case exists in the United States against Wayfair or Schnadig.

Review of the Complaint confirms why no such other case exists. Simply put, Furniture Royal's claims are implausible under applicable standards. Furniture Royal's antitrust allegations that Schnadig cannot sell directly to consumers do not comport with established precedent allowing manufacturers to do so. Much of the Complaint omits required elements for



an antitrust claim, such as allegations of any applicable price differential or the applicable geographic and industry market. The remaining state court claims are similarly doomed, premised on the same implausible antitrust claims. Under these circumstances, where these allegations are insufficient to maintain federal antitrust claims and the related state-based claims as a matter of law, Furniture Royal's complaint should be dismissed pursuant to the plausibility standard originally set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which similarly upheld dismissal of implausible antitrust claims, recognizing the great expense associated with that form of discovery resulting in coerced settlement of weak claims.

This Motion is based upon the following Memorandum of Points and Authorities, the pleadings and papers on file in this matter, any oral argument that the Court may wish to entertain, and any other matters the Court deems appropriate to consider.

DATED:   April 27, 2018.            McDONALD CARANO LLP

                                    By: */s/ Craig A. Newby*
                                        Craig Newby (NSBN 8951)
                                        Laura Jacobsen (NSBN 13699)
                                        2300 West Sahara Avenue, Suite 1200
                                        Las Vegas, Nevada 89102

                                        *Attorneys for Defendant*
                                        *Schnadig International Corp.*

4845-8487-5363, v. 1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    STATEMENT OF FACTS**

The Complaint alleges as follows:[1]

Furniture Royal is a furniture retailer located in the Las Vegas area.  Compl. ¶ 9. Schnadig is a manufacturer of a "high style furniture line" that "sells directly to retailers, such as Furniture Royal."  *Id.* ¶¶ 10-11.  Furniture Royal also alleges that Schnadig also "utilizes advertising platforms such as e-commerce to sell and distribute to consumers directly" by placing "furniture on website[s]" offered by Defendant Wayfair, Inc.[2]  *Id.* ¶ 12.  No allegations are made as to the market power Schnadig has within the Las Vegas area or within the "high style furniture" industry relative to other furniture manufacturers.  *See generally id.*

Furniture Royal alleges that Schnadig "discriminated in price as between 'favored customers,' purchasing directly from [Schnadig], by and through e-commerce advertising platforms PERIGOLD and WAYFAIR; and 'non-favored customers' whom purchased from retailers such as Plaintiff."  *Id.* ¶ 48.  The Complaint therefore concludes that Schnadig injured Plaintiff in competition by "directly competing with retailers and dealers such as Plaintiff."  *Id.* ¶ 50.  Furniture Royal further claims that a conspiracy with Wayfair excluded Furniture Royal as a price competitor by selling for substantially reduced prices, thereby preventing distribution of Schnadig products into the market in an efficient and competitive manner.[3]  *Id.*  ¶¶ 59-60; *see also id.* ¶ 58 ("These combinations and conspiracies consisted of agreements, understandings, and concerted actions to decrease prices on [Schnadig] product and eliminate manufacture[r] suggested retail price."); *accord id.* ¶¶ 24-25, 27-29, 36, 38, 43, 53.  Furniture Royal also alleges that it is both a customer and a direct competitor of Schnadig, in that Schnadig sells its products

---

[1] Schnadig disputes many of these facts but accepts them as true for purposes of this motion to dismiss pursuant to FRCP 12(b)(6).

[2] Schnadig disputes this assertion, as Wayfair is an online furniture retailer and Schnadig does not sell directly to consumers.  However, for purposes of this Motion only, it accepts Furniture Royal's assertion.

[3] Furniture Royal neither alleges its wholesale pricing paid to Schnadig nor the pricing Wayfair receives.  It also fails to allege whether or how Schnadig would recoup profits associated with the alleged scheme.

4845-8487-5363, v. 1

to retailers such as Furniture Royal for re-sale to consumers, but that it also allegedly sells directly to consumers through Wayfair's websites. *Id.* ¶¶ 33-35. Thus, according to Furniture Royal's theory, Schnadig's "predatory pricing" acts not just to foreclose competition with its competitors, but with its customers.

On this basis, Furniture Royal asserts federal antitrust claims for violating the Robinson-Patman Act of 1936 (15 U.S.C. § 13) (*see* First and Fifth Claim for Relief) and the Sherman Act (15 U.S.C. § 1).[4] *See* Third Claim for Relief. Further, Furniture Royal asserts numerous state court claims premised on the same presumption of federal antitrust violations, including civil conspiracy, fraudulent misrepresentation, violation of NRS 598A.060, and intentional interference with prospective economic advantage.[5]

Because these allegations are insufficient to maintain federal antitrust claims and the related state-based claims as a matter of law, Furniture Royal's complaint should be dismissed pursuant to the plausibility standard originally set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which similarly upheld dismissal of implausible antitrust claims, recognizing the great expense associated with that form of discovery resulting in coerced settlement of weak claims.

---

[4] No such similar case has been found through legal research involving either Defendant. Schnadig submits that is because these claims are not valid as a matter of law as set forth in this Motion.

[5] Furniture Royal also asserts a breach of contract claim. Should this Court dismiss the remaining claims as set forth in this Motion, this Court should exercise its discretion to dismiss this state law claim as well until Furniture Royal can demonstrate damages constituting grounds for this Court to consider this claim pursuant to diversity jurisdiction. It is unclear from the contract claim, based on the prayer for relief seeking damages only in "an amount in excess of $10,000.00" whether such a claim alone would qualify for diversity jurisdiction.

4845-8487-5363, v. 1

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A complaint may be dismissed as a matter of law for lack of cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

To survive a motion to dismiss, a complaint asserting antitrust claims must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Legal conclusions, even if cast in the form of factual allegations, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 566 U.S. 662, 664 (2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In *Twombly*, the Supreme Court adopted this standard for antitrust cases understanding that such claims have unusually high discovery costs, recognizing that the mere "threat of discovery expenses will push cost-conscious defendants to settle even anemic cases before reaching those proceedings." 540 U.S. at 559. Here, Furniture Royal's claims fail *Twombly*, requiring dismissal to avoid undue discovery costs and coercion to settle.

## III. THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF

### A. The First and Fifth Claims for Violation of the Robinson-Patman Act Fail as a Matter of Law

#### 1. Overview of Relevant Portions of the Robinson-Patman Act

The Robinson-Patman Act of 1936 (15 U.S.C. § 13) prohibits price discrimination. Specifically:

> It shall be unlawful for any person to … discriminate in price between different purchasers of commodities of like grade and quality . . . where such commodities are sold for use, consumption, or resale . . . and where the effect of such discrimination may be to lessen competition . . . or to injure, destroy, or prevent competition . . . .

4845-8487-5363, v. 1

15 U.S.C. § 13(a). However, not every price difference constitutes price discrimination. Specifically, the Act does *not* "[p]revent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered" nor does it "prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade[.]" *Id.* Accordingly:

> In cases such as this one where the plaintiff asserts that the price difference inhibits its ability to compete with the favored purchasers, the plaintiff must demonstrate that (1) the relevant sales were made in commerce; (2) the product sold was of 'like grade and quality'; (3) the seller discriminated in price as between purchasers; and (4) the discrimination had a negative effect on competition.

*Aerotec Internat'l, Inc. v. Honeywell Internat'l, Inc.*, 4 F. Supp. 3d 1123, 1142 (D. Ariz. 2014) (citing *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176 (2006)).

Also, the purported price discrimination must be between **potential competitors**. Specifically, an "essential element of price discrimination violative of the Robinson-Patman Act is a deleterious effect on competition. Courts have traditionally interpreted this requirement as meaning **the discrimination in prices must be between potential competitors** or at least result in a discriminatory price differential as between potential competitors. *Am. Oil Co. v. McMullin*, 508 F.2d 1345, 1353 (10th Cir. 1975) (emphasis added); *see also Bel Air Mkts. v. Foremost Diaries, Inc.*, 55 F.R.D. 538, 540-41 (N.D. Cal. 1972) (noting that an essential element of a price discrimination case is that there exists competition between the favored customer and the disfavored customer) (citing *Balian Ice Cream Co. v. Arden Farms. Co.*, 2341 F.2d 356 (9th Cir. 1955); *Ingram v. Phillips Petroleum Co.*, 259 F. Supp. 176 (D.N.M. 1996); *Alexander v. Tex. Co.*, 149 F. Supp. 37 (W.D. La. 1957)). "Without this element of competition, the disfavored customer is not injured by any price discrimination." *Bel Air Mkts*, 55 F.R.D. at 541.[6]

---

[6] *See also ABC Distrib, Inc. v. Living Essentials, LLC*, Case No. 15-cv-02064 NC, 2017 WL 2603311, at * (N.D. Cal. Apr. 7, 2017) ("[P]laintiffs will need to demonstrate that each . . . received a lower price than Costco during the class period, and that they in fact competed with Costco for customers.") (citing *Volvo*, 546 U.S. at 177); *Mad Rhino, Inc. v. Best Buy Co., Inc.*, No. CV 03-5604 GPS (AJWx), 2008 WL 8760854, at *4 (C.D. Cal. Jan. 14, 2008) ("To prove

## 2. Furniture Royal's Robinson-Patman Act Claims Fail as a Matter of Law Because End-User Customers Can Receive a Better Price Than Distributors

Furniture Royal's claims, as pled, allege price discrimination between the prices consumers pay through Wayfair versus what Furniture Royal charges its own customers. Specifically, Furniture Royal asserts that Defendants "make resale price maintenance (RPM) protections obsolete."[7] Compl. ¶ 16. Further, Furniture Royal alleges that Schnadig "discriminated in price as between 'favored customers,' purchasing directly from [Schnadig], by and through e-commerce advertising platforms PERIGOLD and WAYFAIR; and 'non-favored customers' whom purchased from retailers such as Plaintiff." *Id.* ¶ 48. In other words, as pled by Furniture Royal, its customers pay a higher price than consumers who purchased the same Schnadig product from Wayfair. The Complaint therefore concludes that Schnadig injured Plaintiff in competition by "directly competing with retailers and dealers such as Plaintiffs." *Id.* ¶ 50. Similarly, the fifth claim specifically alleges that Schnadig's "offering of special pricing to consumers, while declining to extend that special pricing to Plaintiff, in the sale of direct to the consumers of furniture like grade and quality, constitutes a violation" of 15 U.S.C. § 13(a). *Id.* ¶ 72. In other words, Plaintiff's customers paid a higher price than consumers who purchased the same Schnadig product from Wayfair.

---

[price discrimination]. . . the plaintiff must show that there was actual competition between the favored and disfavored customers.") (citing *Bel Air Mkts.*, 555 F.R.D. 538, 540-41); *Clark v. H.P. Hood Inc.*, Civil Action No. 83-0205-C, 1985 WL 6263, at *1 (D. Mass. Sept. 5, 1985) ("In order to prove injury, the plaintiff must show that there was competition between the favored and unfavored customers") (citation omitted); *Abernathy v. Bausch & Lomb Inc.*, 97 F.R.D. 470, 474 (N.D. Tex. 1983) ("[Plaintiffs] must prove that functional competition existed between themselves (the disfavored customers) and the favored customers, for without this element, no injury from price discrimination could be established.") (citations omitted); *accord Tex. Gulf Sulphur Co. v. J.R. Simplot Co.*, 418 F.2d 793, 807 (9th Cir. 1969) (noting that Robinson-Patman prohibits discrimination in pricing to "**customers who are in functional competition**" with each other) (emphasis added).

[7] Until recently, resale price maintenance programs constituted *per se* violations of the Sherman Act. *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007) (overturning decades-old precedent regarding minimum RPM agreements to that effect). Furniture Royal makes no specific allegations pertaining to such an agreement in this Complaint. Instead, there are multiple allegations that Wayfair sells Schnadig's furniture for less than the "Manufacturers **Suggested** Retail Price." Compl. ¶¶ 14, 28(a), 37, 39, 88 (emphasis added).

However, courts faced with the allegation that a seller has offered end-use consumers a better price than it offers to distributors or other resellers—the same allegation advanced by Furniture Royal's first and fifth claims for relief— routinely hold that **such conduct does not violate Robinson-Patman**.  *See, e.g., O'Byrne v. Checker Oil Co.*, 727 F.2d 159, 164 (7th Cir. 1984) (holding that plaintiffs fail to state a cognizable claim under Robinson-Patman in alleging that defendant offered lower prices to ultimate customers who do not compete with the independent dealers such as plaintiffs); *Euramca Ecosystems, Inc. v. Roediger Pittsburgh, Inc.*, 581 F. Supp. 415 (N.D. Ill. 1984) (insufficient allegation of harm to competition under Robinson-Patman to allege defendants gave better prices to direct consumers than to plaintiff distributor).  "Here, the persons who received the benefit of such discrimination are [Schnadig's retail customers, the ultimate consumers of its [products].  They are in competition with no one, let alone plaintiff[].  They themselves have no "customers."  *O'Byrne v. Checker Oil Co.*, 530 F. Supp. 70, 71 (N.D. Ill. 1981).  "[Plaintiff] is not entitled to the same prices that [Schnadig] charges" end-use consumers who purchase directly from Schnadig.  *Aerotec Internat'l., Inc.*, 4 F. Supp. 3d at 1142.  There is no harm to competition here.

Because Furniture Royal cannot state a claim under Robinson-Patman based upon lower prices offered directly to consumers, the first and fifth claims should be dismissed with prejudice.

**B.     The Third Claim for Violation of Section 1 of the Sherman Antitrust Act Fails as a Matter of Law**

**1.     Overview of Relevant Sherman Act Provisions**

"To state a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, claimants must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce… (3) which actually injures competition."  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (citing *Twombly*, 550 U.S. at 554-58; *Les Shockley Racing Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 507 (9th Cir. 1989)).

"Actual harm is indicated by a factual connection between the alleged harmful conduct and its impact on competition in the market . . . and the plaintiff claiming it should point to the specific damage done to consumer in the market. . . with specific factual allegations." *Jacobs v. Tempur-Pedic Internat'l, Inc.*, 626 F.3d 1327, 1336 (11th Cir. 2010) (citing *Full Draw Prods. v. Easton Sports, Inc.*, 182 F.3d 745, 753-54 (10th Cir. 1999)). In deciding whether a plaintiff has alleged harm to competition, "care must be taken in defining 'competition.' Competition consists of rivalry among competitors." *Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995) (citing *Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1040 (9th Cir. 1987)). "Of course, conduct that eliminates rivals reduces competition. But reduction of competition does not invoke the Sherman Act until it harms consumer welfare." *Id.* (citing *Prods. Liab. Ins. Agency, Inc. v. Crum & Forster Ins. Cos.*, 682 F.2d 660, 663 (7th Cir. 1982)); *see Reiter v. Sonotone Corp.*, 442 U.S. 330, 343 (1979) (Congress designed the Sherman Act as a "consumer welfare prescription").

> Consumer welfare is maximized when economic resources are allocated to their best use . . . and when consumers are assured competitive price and quality. . . . Accordingly, an act is deemed *anticompetitive* under the Sherman Act only when it harms both allocative efficiency *and* raises the prices of goods above competitive levels or diminishes their quality.

*Id.* (emphasis in original) (citing *Nat'l Gerimedical Hosp. & Gerontology Ctr. v. Blue Cross of Kan. City*, 452 U.S. 378, 387-88 & n. 13 (1981); *Prods. Liab. Ins.*, 682 F.2d at 663-64).

Thus, below-cost pricing alone is not anticompetitive because, although it causes allocative inefficiency, it brings lower aggregate prices in the market. *Brook Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 223 (1993). "Low prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition . . . . . We have adhered to this principle regardless of the type of antitrust claim involved." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340 (1990). Predatory pricing, however, can harm competition. The Ninth Circuit has aptly described predatory pricing as follows:

> Predatory pricing occurs in two stages. In the first stage, or 'price war' period, the defendant sets prices below its marginal cost hoping to eliminate rivals and increase its share of the market. During this phase, the predator, and any rival

> compelled to challenge the predatory price, will suffer losses. Though rivals may suffer financial losses or be eliminated as a result of the below-cost pricing, injury to rivals at this stage of the predatory scheme is of no concern to the antitrust laws. . . . Only by adopting a long-run strategy is a predator able to injure consumer welfare. *See Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 117 . . . . (1986). A long-run strategy requires the predator to drive rivals from the market, or discipline them sufficiently so that they do not act as competitors normally should. *Id.* If the predator reaches this long-run goal, it enters the second stage, the 'recoupment' period. It then can collect the fruits of the predatory scheme by charging supracompetitive prices—prices above competitive levels. The predator's hope is that the excess profits will allow it to recoup the losses suffered during the price war.

*Rebel Oil*, 51 F.3d at 1433-34 (citations omitted).

### 2. Furniture Royal's Sherman Act Claim Fails as a Matter of Law Because it Fails to Allege Anticompetitive Conduct by Schnadig

Here, it appears that Furniture Royal's third claim for relief alleges that Schnadig and Wayfair conspired to engage in predatory pricing by Schnadig, "undercut[ting] Plaintiff's pricing." Compl. ¶ 53. Specifically, Furniture Royal claims that that the conspiracy excluded Furniture Royal as a price competitor by selling for substantially reduced prices, thereby preventing distribution of Schnadig products into the market in an efficient and competitive manner. *Id.* ¶¶ 59-60; *see also id.* ¶ 58 ("These combinations and conspiracies consisted of agreements, understandings, and concerted actions to decrease prices on [Schnadig] product and eliminate manufacture[r] suggested retail price."); *accord id.* ¶¶ 24-25, 27-29, 36, 38, 43, 53.

Furniture Royal's predatory pricing allegations, however, fail to plausibly allege anticompetitive conduct because Furniture Royal's theory makes no sense. *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.") Furniture Royal alleges that it is both a customer and a direct competitor of Schnadig, in that Schnadig sells its products to retailers such as Furniture Royal for re-sale to consumers, but that it also allegedly sells directly to consumers through Wayfair's websites. Compl. ¶¶ 33-35. Thus, according to Furniture Royal, Schnadig's "predatory pricing" acts not just to foreclose competition with its competitors, but with its *customers*. The idea that Schnadig is attempting to force its own distributor customer out of competition with Schnadig is

4845-8487-5363, v. 1

not only implausible, it is ridiculous.  It would harm Schnadig to force retailers of its products out of the market.  In addition, if Schnadig wanted to force Furniture Royal out of the market for its products, it would need only to simply cease selling its product to Furniture Royal or any other retailer.  *See* 15 U.S.C. § 13 (Robinson-Patman act does *not* "prevent persons engaged in selling goods, wares, or merchandize in commerce from selecting their own customers in bona fide transactions and not in restraint of trade").

Furniture Royal has therefore failed to plead how offering low prices results in "damages done to the consumer in the market . . . with specific factual allegations." *Jacobs*, 626 F.3d at 1336 (citing *Full Draw Prods.*, 182 F.3d at 753-54).  Instead, Furniture Royal insufficiently alleges harm only to itself.  *See Aerotec Internat'l, Inc.*, 4 F. Supp. 3d at 1136 (holding that evidence of lost business is insufficient because a plaintiff must prove a reduction of competition in the market in general and not mere injury to their own positions as competitors in the market) (quoting *Les Shockley*, 884 F.2d at 508-09).

### 3. Furniture Royal's Sherman Act Claim Fails as a Matter of Law Because it Fails to Allege Required Market Information

Even if it had successfully alleged anticompetitive conduct, Furniture Royal has failed to define "both (1) a geographic market and (2) a product market" as required to state a claim under Section One of the Sherman Act.  *Jacobs*, 626 F.3d at 1336 (citing *Rossi v. Std. Roofing, Inc.*, 156 F.3d 452, 464 (3d Cir. 1998)); *see also NewCal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 n.4 (9th Cir. 2008) (analyzing plaintiff's allegations of same).  Because a defendant's market power is part of the analysis, "a complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially unsustainable." *Id.* at 1045 (citing *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436-37 (3d Cir. 1997)).  Furniture Royal fails to allege what the applicable product market may be, whether it be consumer goods, home goods, furniture, or high-end furniture.  There is no way for this Court to assess whether Schnadig plausibly has market power if no such market is even alleged.  Geographically, Furniture Royal contradictorily alleges that Schnadig has attempted to exclude competition "in the relevant markets consisting of Nevada and other states of the United States"

4845-8487-5363, v. 1

(Compl. ¶ 27-28), that "[t]he relevant geographic market for furniture products is nationwide in scope" (*id.* ¶ 10), and that Schnadig takes advantage of Furniture Royal with its showcase "in a local market." (*Id.* ¶ 66). Such "conclusional" and "skimpy allegations" of the relevant product and geographic markets are insufficient to survive a motion to dismiss post-*Twombly*. *Jacobs*, 626 F.3d 1327 (holding that district court properly dismissed Section One claim where Plaintiff provided only legal conclusions regarding the relevant market and rejecting Plaintiff's argument that he should have the chance to add facts in discovery because that "would absolve [plaintiff] of the responsibility under *Twombly* to plead facts plausibly suggesting" the market's composition.). This claim should be dismissed with prejudice.

### C. The Related State Law Claims Premised on Invalid Federal Antitrust Claims Must be Dismissed with Prejudice

Furniture Royal makes numerous state law claims premised on the same alleged violation of federal antitrust law. Because the following state law claims are premised on the validity of federal antitrust claims, each must be similarly dismissed.

#### 1. The Civil Conspiracy Claim Relies Upon Federal Antitrust Claims as the Purported "Unlawful Objective"

Furniture Royal's second claim for relief is for civil conspiracy. Under Nevada law, civil conspiracy consists of a "combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damages results from the acts." *Consol. Generator-Nev., Inc. v. Cummins Engine Co. Inc.*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1256 (1998). A claim for civil conspiracy fails to state a cognizable claim for relief if it fails to identify an unlawful objective or act. *Morris v. Bank of Am. Nev.*, 110 Nev. 1274, 1276 n.1, 886 P.2d 454, 555 n.1 (1994).

Here, Furniture Royal's civil conspiracy claim relies upon purported price discrimination as the unlawful objective: "Defendants, by concerted action, intended to place Plaintiff at a significant disadvantage in the sale of Caracole products by themselves selling Caracole products directly to consumers on e-commerce advertising platforms such that [Schnadig] would

undercut Plaintiff's pricing." Compl. ¶ 53. Accordingly, for the same reasons the federal antitrust claims must be dismissed, the civil conspiracy claim fails as a matter of law.

### 2. The State Antitrust Claim Relies Upon Federal Antitrust Claims

Further, Furniture Royal's sixth claim for relief assets that Schnadig violated Nevada's antitrust statutes, specifically NRS 598A.060. Compl. ¶¶ 76-81. "The provisions of this chapter shall be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes." NRS 598A.050. Thus, where a complaint fails to state a federal antitrust violation, claims brought under NRS Chapter 598A are appropriately dismissed. *See Boulware v. State of Nev. Dep't of Human Res.*, 960 F.2d 793, 800-01 (9th Cir. 1992).

### 3. The Intentional Interference Claim Relies Upon the Purported Price Fixing Scheme that Does Not Exist as a Matter of Federal Antitrust Law

Furniture Royal's seventh claim for relief asserts a claim for intentional interference with prospective economic advantage. Compl. ¶¶ 82-94. To state a claim for wrongful or intentional interference with a prospective economic advantage, a plaintiff must plead and prove five elements:

> 1) a prospective contractual relationship between the plaintiff and a third party; 2) the defendant's knowledge of this prospective relationship; 3) the intent to harm the plaintiff by preventing the relationship; 4) the absence of privilege or justification by the defendant; and, 5) actual harm to the plaintiff as a result of the defendant's conduct.

*Leavitt v. Leisure Sports Inc.*, 734 P.2d 1221, 1225 (Nev. 1987); *see also In re Amerco Derivative Litig.*, 252 P.3d 681, 702 (Nev. 2011). "To establish this tort, a plaintiff 'must show that the means used to divert the prospective advantage was unlawful, improper or was not fair and reasonable.'" *Williams v. Univ. Med. Ctr. of S. Nev.*, 688 F. Supp. 2d 1134, 1140 (D. Nev. 2010) (quoting *Custom Teleconnect, Inc. v. Int'l Tele–Servs., Inc.*, 254 F. Supp. 2d 1173, 1181 (D. Nev. 2003)).

Here, the alleged "means used to divert the prospective advantage" was the purported price discrimination addressed above. Specifically, Furniture Royal alleges that Schnadig was "not privileged or justified in covering up their price fixing conspiracy that placed Plaintiff at a competitive disadvantage in the sales processes in order to promote their own financial gain to

the detriment of Plaintiff's prospective economic relations." Compl. ¶ 90. Accordingly, because the alleged improper means (here, price fixing) does not exist as a matter of law as discussed above, this claim fails as a matter of law and must also be dismissed.

### D. Furniture Royal Fails to Plead Fraud with Specificity

Rule 9(b) requires a plaintiff to allege fraud with specificity. FRCP 9(b); *Hernandez v. Vanveen*, No. 2:14-cv-1493-JCM-CWH, 2016 WL 8735664, at *3 (D. Nev. Mar. 18, 2016). This requires a plaintiff to allege the "who, what, when, where, and how" of the alleged fraud. *Valencia v. Sharp Elec. Corp.*, 561 F. App'x 591, 593 (9th Cir. 2014). "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (9th Cir. 2002). For claims based on alleged false promises, the plaintiff must allege "what is false or misleading about a statement, and why it is false.'" *Id.* Thus, a predicate to any fraudulent misrepresentation claim is the alleged misrepresentation upon which the plaintiff putatively relied. *Id.*

Here, Furniture Royal does not allege the "who," "where," "when," and "how" at all, let alone with specificity. This alone is fatal to the fraud claim as pled. Further, Furniture Royal fails to allege a clear, specific misrepresentation upon which it claims it relied. Furniture Royal instead states numerous, somewhat contradictory "representations" that even Furniture Royal cannot decide whether they sound in fraud or comprise a term of the parties' "contract" (which Furniture Royal cannot decide is express, implied, or otherwise). *Compare* Compl. ¶¶ 63-70 *with id.* ¶¶ 95-101. For example, Furniture Royal alleges that Schnadig "falsely represented" that "it did not offer any special pricing on its furniture to consumers" and that it did not "sell to consumers directly." Compl. ¶ 64. Apparently, Schnadig also denied "such actions" as "special pricing." *Id.* A few paragraphs later, Furniture Royal alleges it relied on Schnadig's representation "that its prices were fixed" and that Schnadig was "not undercutting retailers." *Id.* ¶ 67. Such a failure to even apprise a defendant of the alleged misrepresentation at issue falls far short of what *Twombly* and Rule 9 require. This claim should be dismissed.

/ / /

/ / /

4845-8487-5363, v. 1

## IV. CONCLUSION

For the foregoing reasons, Schnadig respectfully requests that the Court dismiss the Complaint in its entirety.

Dated April 27, 2018.            McDONALD CARANO LLP

By: */s/ Craig A. Newby*
Craig A. Newby (NSBN 8951)
Laura Jacobsen (NSBN 13699)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102

*Attorneys for Defendant
Schnadig International Corp.*

4845-8487-5363, v. 1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of McDonald Carano LLP, and that on the 27th day of April, 2018, a true and correct copy of the foregoing **SCHNADIG INTERNATIONAL CORP.'S MOTION TO DISMISS COMPLAINT PURSUANT TO FRCP 12(b)(6)** was electronically filed with the Clerk of the Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification.

 */s/ Elizabeth Helms*
An Employee of McDonald Carano LLP

4845-8487-5363, v. 1