**ACOMP**
SIGAL CHATTAH, ESQ.
NV Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd. #204
Las Vegas, Nevada 89101
(702) 360-6200
(702) 643-6292
Chattahlaw@gmail.com
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| FURNITURE ROYAL, INC., a Nevada Corporation, | ) <br> ) CASE NO.: <br> ) DEPT.: |
| Plaintiff, | ) |
| vs. | ) **PROPOSED AMENDED** <br> ) **COMPLAINT** |
| SCHNADIG INTERNATIONAL CORP. d/b/a CARACOLE, a North Carolina Corporation, WAYFAIR, INC. a Delaware Corporation d/b/a WAYFAIR and PERIGOLD, | ) **[FIRST]** <br> ) <br> ) <br> ) |
| Defendants. | ) |

COMES NOW, Plaintiff, FURNITURE ROYAL, INC., by and thorugh the undersigned attorney of record, SIGAL CHATTAH, ESQ. of CHATTAH LAW GROUP, who hereby submits the foregoing Amended Complaint and complains of Defendants and each of them and alleges as follows:

**I.**

**JURISDICTION & VENUE**

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 ,and 15 USC §1, 2, under the Sherman act, and the Clayton Act, Sections , 5, and

16, as amended; 15 U.S.C.A. § 13 (Robinson-Patman Antidiscrimination Act of 1936) and in addition the Court has jurisdiction over the Parties based on diversity of citizenship.

2. This action is not based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or General Accounting Office report, hearing, audit, or investigation, or from the news media.

3. Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is situated in the State of Nevada. In addition, for purposes of venue, Defendants are corporations and, as such, are deemed to reside in this judicial district because they are subject to personal jurisdiction in the State of Nevada.

4. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants, are unknown to Plaintiff. Plaintiff is informed and believes and thereon alleges that each of the Defendants is responsible in some manner for the events and happenings herein referred to and damages caused proximately thereby to Plaintiff as herein alleged. That Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of said Defendants, when same have been ascertained by Plaintiff, together with appropriate charging allegations, and to join such Defendants in this action.

## II.

## PARTIES

5. Plaintiff, FURNITURE ROYAL, INC., is a Nevada Corporation, is a business operating in the State of Nevada, County of Clark.

6. Defendant, SCHNADIG INTERNATIONAL CORP. d/b/a CARACOLE (hereinafter CARACOLE) at all times relevant herein was a North Carolina Corporation, doing business in Nevada.

7. SCHNADIG INTERNATIONAL CORP. is a United States Corporation wholly owned by MARKOR FURNITURE INTERNATIONAL CORPORATION, a Chinese Corporation listed on the Shanghai Stock Exchange.

## III.

## NATURE OF TRADE AND COMMERCE

8. There are four phases of the supply chain: commodities, manufacturing, distribution, and retail.

9. Plaintiff FURNITURE ROYAL, at all times relevant herein was and is a furniture boutique selling high end furniture products. FURNITURE ROYAL sells furniture manufactured by Defendant CARACOLE, in the Las Vegas area.

10. Defendants CARACOLE are the manufacturers of high style furniture line, offering "Couture" furniture allowing the consumer to custom order pieces according to taste and preference. The furniture industry is nationwide in scope and involves, the manufacture and marketing of such products across the United States of America. The relevant geographic market for furniture products is nationwide in scope.

11. CARACOLE, as manufacturer sells directly to retailers, such as FURNITURE ROYAL for distribution and retail of Caracole products across the United States of America.

12. CARACOLE also utilizes advertising platforms such as e-commerce to sell and distribute to consumers directly; specifically, CARACOLE places furniture on website such as PERIGOLD.COM (hereinafter "PERIGOLD") and WAYFAIR.COM (hereinafter "WAYFAIR") an e-commerce advertising site.

13. PERIGOLD is an ecommerce advertising site that utilizes web based sales on various high end furniture lines such as CARACOLE.

14.     PERIGOLD and WAYFAIR utilize their websites as platforms to advertise and display the furniture sold directly by the manufacturer and purchased by the consumer. When consumers view Caracole products and furniture on the advertsing platforms WAYFAIR and PERIGOLD, the furniture is priced at up to 40% discount below what Caracole Manufacturers Suggested Retail Price ("MSRP"). Both advertising platforms PERIGOLD and WAYFAIR spend millions of dollars annually to advertise these Caracole products, providing a platform for Defendant Caracole to compete with retailers such as FURNITURE ROYAL.

15.     PERIGOLD and WAYFAIR markets and sell Caracole products online for the reduced discount set up by Defendant CARACOLE, directly competing with retailers and dealers.

16.     PERIGOLD, WAYFAIR and CARACOLE, by and through selling Caracole products, make resale price maintenance (RPM) protections obsolete and small business owners such as Plaintiffs herein are undercut and competition is reduced by allowing consumers to simply purchase CARACOLE's product online with PERIGOLD and WAYFAIR acting as the marketing and advertising platform for CARACOLE.

17.     During the time period covered by this Complaint, Defendant has sold and shipped substantial quantities of Caracole furniture in a continuous and uninterrupted flow of interstate commerce to its customers located in other states.

18.     Defendants established and have operated facilities located in Greensboro, North Carolina, and have sold and shipped their furniture in various states of the United States. These furniture orders were shipped directly to the consumer by Defendant CARACOLE, following display on PERIGOLD and WAYFAIR in a continuous and uninterrupted flow of interstate commerce.

19. Any restraint upon free competition in the manufacture, marketing or sale of furniture by CARACOLE in the United States necessarily and directly restrains and affects interstate commerce in and among the states. Plaintiff is engaged in the business of purchasing and selling CARACOLE furniture products in the State of Nevada, in competition with CARACOLE.

20. Between the years of 2010 through 2013, CARACOLE representatives assured Plaintiff that Plaintiff would be the exclusive distributor in Las Vegas of CARACOLE products.

21. CARACOLE initially breached the exclusivity by first selling said products on the website platform [onekingslane.com](onekingslane.com).

22. CARACOLE then expanded this breach and fraud by selling their products on Perigold/Wayfair.com, moving from a smaller platform like onekingslane.com to Perigold.com, a much larger internet platform.

### IV.

### INTRODUCTION AND MARKET DEFINITIONS

23. WAYFAIR owns and operates, an internet site that offers various platforms to sell furniture directly to consumers through vendors such as Caracole.

24. Unlike most internet sites, which own the products that they sell, WAYFAIR is simply used as an advertising platform for distibutors and manufacturers to sell directly to the consumers.

23. The "Retail Furniture Market" is defined as the market for the sale and purchase of furniture by consumers from retailers.

24. WAYFAIR's online platform presents consumers enormous advantages over purchasing furniture in retail stores.

25. Online purchasing through WAYFAIR allows for wholesalers to sell directly to the consumers at a grossly discounted rate, since the middle level retailer is cut out of the chain of distribution.

26. Consumers and merchants have come to recognize the Online advertising platform as a separate and distinct market from the retail market for purchasing furniture at brick and mortar stores.

27. Barriers to entry into the WAYFAIR's online platform are high. In addition the barriers to entry into the Online Platform imposed by WAYFAIR's illegal anticompetitive behavior, discussed in detail herein, other barriers to entry include the fact that: (1) the products are protected by copyrights that any new entrant would have to obtain a license for in order to legally sell; (2) the copyright holders are unlikely to license their copyrighted licenses to any new entrant unless that entrant can credibly show that it will be able to sell these proucts to a large audience, which the ties effectively make impossible because most purchasers through WAYFAIR (3) any new entrant would have to offer an inventory of millions of products, necessitating (in addition to the copyright license requirement), an inordinate investment of capital and resources.

28. The Online Furniture Advertising Platform market offers a number of features not readily available at traditional "brick and mortar" furniture stores, which help set it apart as a distinct market.. The furniture selection available in the Online Advertising market is not coextensive with the furniture selection available at brick and mortar furniture stores. Online Advertisement platforms provide a ready outlet for manufacturers whose furniture is not readily available at brick and mortar furniture stores, which only have room to carry a small fraction of the inventory of Online Advertising Platforms.

29. In the eyes of consumers, the Online Advertising Platform and the brick and mortar market are not in price-competition with one another. The Online Advertising Platform

focuses on selling limitless furniture designs as they do not have warehouses holding them while the brick and mortar market is focused on selling limited inventorys, thereby making price-comparison between these two distinct markets a non sequitur. Further, because of the ubiquitous nature of the internet, Online sales are available to a whole host of consumers who do not have ready access to a nearby brick and mortar furniture store, let alone a nearby brick and mortar store stocking the particular label or designer desired by these consumers at any given time. Similarly, because search costs on the internet are a fraction of search costs involved in the brick and mortar market, consumers are not likely to and do not forego a purchase of a piece of furniture online even if they hypothetically would believe that the same piece of furniture could be obtained somewhat less expensively at a traditional brick and mortar store.

30. The costs associated with traveling to brick and mortar furniture stores, searching one or more such stores for a particular piece of furniture, and comparison shopping between these brick and mortar furniture stores and online stores dissuade consumers from foregoing a purchase made from the comfort of their own home or office for the same piece of furniture, discounted directly by the manufacturer, even if doing the foregoing tasks could hypothetically result in a savings of a few dollars. Put differently, consumers are not likely to and do not travel miles to their nearest brick and mortar furniture store in the hopes of purchasing furniture that they could make instantaneously on their home computer, at a significant discount directly from the manufacturer, upwards to 40% off the retail brick and mortar price.

31. For these and other reasons, the Online Advertising Platform market is and has been recognized as a separate relevant product market. For similar reasons, the Online Advertising market is distinct from the brick and mortar market for furniture. Again online consumers do not have to endure the hassle and expense of going to a brick and mortar store selling furniture.

32.     The relevant geographic market for the Retail Furniture Markets is the United States.

A.     **COURSE OF DEALINGS**

33.     Plaintiff has been purchasing from CARACOLE since March, 2010. During or about 2016, CARACOLE commenced advertising with WAYFAIR.COM. In September 2017, WAYFAIR.COM launched the subsidiary website PERIGOLD.COM as a high end platform to sell CARACOLE products directly to the public.

34.     Defendants CARACOLE breached its express and implied agreements with Plaintiff's business by offering to and agreeing with PERIGOLD and WAYFAIR to sell CARACOLE furniture directly to the consumer. PERIGOLD and WAYFAIR offered their e-commerce websites to CARACOLE so that CARACOLE can sell directly to consumers, bypassing and cutting out dealers and retailers across the United States.

35.     CARACOLE offered to sell and continues to offer to sell furniture to consumers at prices below retailer pricing on the PERIGOLD and WAYFAIR platform ("favored customers"), including FURNITURE ROYAL, and below the price at which FURNITURE ROYAL can sell to the consumer. FURNITURE ROYAL is and remains to be excluded from the market.

36.     FURNITURE ROYAL's customers have used the Furniture Royal store as an "Exhibit Room" solely to see the product in person and then purchase directly from CARACOLE on websites such as PERIGOLD and WAYFAIR, whereby orders are directly shipped from CARACOLE to the customers location and delivery address.

B.     **THE FRAUD**

37.     During the period commencing 2016 and continuing up to and including the present time Defendant CARACOLE, has sold directly to consumers, using WAYFAIR and PERIGOLD as advertising platforms through ecommerce at a significantly reduced price,

unlawfully fixing the price of their goods and unfairly competing with retailers across the Nation. These customers have been treated as "favored customers" by purchasing directly from the manufacturer Caracole.

38.  Defendants engaged in the conduct alleged above with the specific intent to compete with retailers, such as Plaintiff and sell Caracole furniture products at a reduced price.

39.  Defendants CARACOLE and WAYFAIR have unlawfully and willfully abused, exercised and misused the power in violation of the Sherman Anti-Trust Act.

40.  Defendant CARACOLE's abuse, exercise and misuse of the PERIGOLD and WAYFAIR ecommerce website to compete with retailers in sells and manufactures for, have had the following unlawful purposes and objectives, inter alia:

(a)  To attempt to exclude competition in the relevant markets constisting of Nevada and other states of the United States;

(b) to foreclose, restrain and exclude competition, including price competition, among sellers of Caracole furniture.

(c) to foreclose and exclude Plaintiff as a price competitor;

(d) to foreclose, restrain and exclude competition, including price competition, among manufacturers and dealers of Caracole furniture;

(e)  to impose territorial, geographic and product restrictions and limitations on Plaintiff and other sellers of Caracole furniture and to foreclose, restrain and exclude competition between them; and

(f)  to deprive Plaintiff and other sellers of an opportunity to engage in the business of selling furniture in a free, open and competitive market.

41.  In furtherance of the unlawful purposes and objectives, as described above, Defendant CARACOLE engaged in and carried out the following unlawful acts and conduct, inter alia:

(a) Defendant CARACOLE provided favored customers with 40% discounts below MSRP, *i.e.*, reduced rates on their furniture when purchased through e-commerce platforms PERIGOLD and WAYFAIR (i.e. "favored customers").

(b) Defendant CARACOLE sold furniture directly to customers, bypassing its dealer network, and selling pieces of furniture at prices below its best dealer price, in order to lock in the selected customer with using such ecommerce platforms.

(c) Defendant abused, exercised and misused the exclusive manufacturing power as described above;

(d) Defendant attempted to enlarge and expand its exclusive and monopoly power, as described above, and to acquire, exercise and, and to exclude competition in the relevant markets consisting of the State of Nevada and other States in the United States.

(e) Defendants combined and conspired to and did foreclose and exclude Plaintiff as a competitor, including as a price competitor, by selling directly to customers, and competing directly with Plaintiff as retailer and dealer of Caracole products. Therefore Plaintiff was restrained and excluded from effectively competing in the sale of Caracole products in the relevant market was foreclosed, restrained and excluded.

(f) Defendants deprived Plaintiff and other furniture retailers of an opportunity to engage in the business of selling Caracole products in a a free, open and competitive market, thereby preventing the distribution of furniture into the market place in an efficiently and competitive manner.

C. **EFFECTS ON COMPETITION AND THE MARKET**

4. CARACOLE and WAYFAIRS's abusive exercise of competition with retailers and dealers and misuse of power, have substantially excluded, foreclosed and lessened competition. There is an attendant dangerous probability of success that Plaintiff and other retailers similialy situated, will be excluded as a competitor in the following respects, *inter alia:*

(a) Defendant's acts and conduct of selling directly to customers, at substantially reduced prices has had the effect of restraining and foreclosing Defendant's competitiors, from competing and increasing their market shares, and has enabled Defendant to maintain or increase its share of the market.

(b) Defendant's acts and conduct of selling directly to customers, as alleged above, has had the effect of restraining and foreclosing retailers and dealers of Caracole products, from competing with Defendants for the reason that these retailers and dealers must purchase Defendant's furniture at prices which exceed Defendant's direct sale prices to customer's on WAYFAIR and PERIGOLD platform, and has had the the additional effect of reducing sales and market shares of retailers and dealers of Caracole products.

(c) Defendant's acts of selling directly to customers ("Favored Customers") at a significantly reduced prices through WAYFAIR or PERIGOLD, has had the effect of "Nonfavored Customers" being forced to pay higher prices for Caracole products at retail locations. As a consequence, competition between 'favored" and "Nonfavored" customers of Caracole products has been reduced and foreclosed. This has had the effect of increasing the market share of "favored customers", and has prevented "non-favored customers" from competing efficiently with favored purchasers.

(d) Competition, including price competition among Defendant CARACOLE and retailers and dealers of Caracole products has been substantially excluded, foreclosed and lessened;

(e) Retailers and dealers of Caracole products have been denied the benefits of a free, competitive and open market and choice in the market place among places to purchase Caracole products has been restrained, foreclosed and eliminated.

(f) Due to Defendant's fraudulent behavior, Defendant enjoys a price advantage by selling directly to consumers, where Plaintiff simply cannot compete.

(g) With Defendants' eliminated dealer margin, Perigold offers white glove free delivery which Plaintiffs and others similiarly situated can simply not compete with .

(h) Defendants' use of massive online presence of advertising platform, simply allows Defenant to utilize massive scanners like google, to directly sell to consumers eliminating the dealer margins, by bypassing businesses like Furniture Royal.

(i) Defendants utlize the online websites to sell to the whole the whole geographic market which is the United States of the market product which remains all of CARACOLE's products.

(j) CARACOLE repeatedly, and with every transaction it fulfills from an online order betrays the brick and mortar stores it deals to and undercuts them by selling on WAYFAIR.

**D.    INJURY TO PLAINTIFF:**

32.    CARACOLE's actions, abuse, execise of price fixingand attempt to price fix, have directly and proximately caused inuries to Plaintiff's business  and property, and will continue to cause substantial and immediate injuries to Plaintiff's business and property in the following respects; inter alia:

(a) Plaintiff has been restrained, foreclosed and excluded as a competitor, including as a price competitor, from the market of selling Caracole products;

(b) Plaintiff has been coerced and required to withdraw from competition and sales of Caracole products;

(c) Plaintiff has been deprived of an opportunity to engage in the business of selling Caracole products in a free, open and competitive market;

(d) Plaintiff has lost business, customers, sales, income and profits;

(e) Plaintiff has suffered injuries to its business, property and business organization built up over many years, involving substantial investment and having substantial value;

(f) Plaintiff has suffered injuries to its standing the market place and business community and to its business reputation.

33. Plaintiff is engaged in the business of purchasing and selling Caracole products in the State of Nevada and Defendants have engaged in price discrimination by placing furniture on advertising platforms such as Wayfair and Perigold, and selling same at a reduced manufacture price.

34. This type of price predation by Defendants is an attempt to wipe out its smaller competitors by using its deeper pockets to undercut the competitors' prices, thereby taking away their customers.

V.

**GENERAL ALLEGATIONS**

35. Plaintiff incorporates by this reference the allegations contained in all of the preceding paragraphs as if fully set forth herein.

36. CARACOLE manufactures furniture, which are purchased upstream by companies such as FURNITURE ROYAL to sell to the public.

37. CARACOLE also advertises on internet platforms such as Wayfair.com, Perigold.com. to sell directly to consumers by placing furniture on these advertising platform sites and is a direct competitor of FURNITURE ROYAL.

38. CARACOLE uses these internet advertising platforms to sell directly to consumers in direct competition with dealers and retailers like FURNITURE ROYAL.

39. CARACOLE undercuts retailers by providing a discount through these online platform websites ("favored customers") whereby forcing retailers to discount the product to the conform to the platform sites.

40. In fact, CARACOLE is extending preferential pricing to customers by using the internet platform sites, despite providing manufactures suggested retail prices (MSRP) to retailers selling CARACOLE products.

41. Contrary to CARACOLE's assurances that its prices were fixed, CARACOLE was selling directly to consumers at reduced prices by and through online advertising platforms such as Wayfare.com and Perigold.com.

42. Not only did CARACOLE mislead FURNITURE ROYAL about its pricing, but by duping FURNITURE ROYAL into believing that CARACOLE's prices were fixed, CARACOLE placed FURNITURE ROYAL at a distinct disadvantage against CARACOLE, by allowing customers to purchase off the internet platforms at a discount off the MSRP instead of retailers such as FURNITURE ROYAL.

43. For example, a customer would see CARACOLE furniture at FURNITURE ROYAL's store in Las Vegas, Nevada and would then purchase it online through an internet platform Defendants Wayfair.com and Perigold.com that was discounted by CARACOLE to compete with retailers.

44. Not surprisingly, as a result of the secret price collusion between CARACOLE and the internet platforms, Wayfair.com and Perigold.com, CARACOLE is not only competing with Retailers it distributes to but also, is profiting off the ability of customers going to

furniture showrooms and seeing the furniture in person, while purchasing it directly from the manufacturer online at a discount.

45.  CARACOLE has an insurmountable advantage over FURNITURE ROYAL by offering special pricing on the furniture since it is being sold directly by the manufacturer on a internet website platform.

46.  At the time of entering into the Agreement to sell Caracole furniture, FURNITURE ROYAL had no knowledge that, CARACOLE was using internet websites to advertise and directy sell the same furniture at a discount directy to the consumer.

47.  FURNITURE ROYAL realized the CARACOLE was offering preferential pricing, using the internet advertising platforms to directly sell to consumers and undercutting all their retailers.

48.  FURNITURE ROYAL's suspicion of Defendants' deception was subsequently confirmed as products were being sent directly by the manufacturer to the consumers, and not by the internet websites, used as advertising platforms.

VI.

### FIRST CLAIM FOR RELIEF
**(SCHNADIG)**
**(Fraudulent Misrepresentation )**

49.   Plaintiff incorporates by this reference the allegations contained in all of the preceding paragraphs as if fully set forth herein.

50.   Defendant falsely represented to Plaintiff that it did not offer any special pricing on its furniture to consumers or sell to consumers directly. Specifically, Plaintiffs inquirecd whether there was special pricing and Defendants denied such actions.

51. Plaintiffs and other furniture dealers had been attending High Point Market[1] twice a year buying all new introductions in order to remain dealers of the subject brands.

52. It was never conveyed to Plaintiffs, at any time that the brand would ever be marketed on an online advertsing platform and for direct sale through same.

53. Plaintiffs would not have agreed to display Caracole products that would be sold in direct competition by the manufacturer online.

54. Defendants defrauded Plaintiff by luring Plaintiff to display and market the Caracole brand which was brand new when Plaintiffs agreed to display it in 2010, and subsequently thereafter, by and through marketing at the High Point Market trade show.

55. Defendants knew at the time of selling and placing products with Plaintiffs that it would be simply unfeasible for Furniture Royal to compete with manufacturer in the retail furniture market.

56. Defendants knew or should have known those representations were false.

57. Defendants intended to induce Plaintiff into continued sale of Caracole products by having a place to showcase Caracole products in a local market.

58. Plaintiffs justifiably relied on Defendants' representations that its prices were fixed, and that Defendants were not undercutting retailers.

59. As a result of Defendants's misrepresentations, Plaintiff has suffered financial damage in an amount to be determined at trial, which amount is in excess of One Million US Dollars.

60. Plaintiff alleges upon information and belief that Defendant's actions were done willfully, with the intent to cause injury to Plaintiff, and in conscious disregard of Plaintiff's

---

[1] The Hight Point Market is the largest furnishings industry trade show in the world, bringing more than 75,000 people to High Point, North Carolina, every six months.

rights. Plaintiff is therefore guilty of malice and oppression, and Plaintiff is entitled to an award of punitive damages appropriate to punish Defendants, and to deter others from engaging in similar misconduct.

61. As a direct and proximate result of the acts and omissions alleged herein, it has become necessary for Plaintiff to retain the services of attorneys to prosecute this action, and Plaintiff therefore is entitled to recover its attorneys' fees and costs incurred herein.

## II.

### SECOND CLAIM FOR RELIEF
### (SCHNADIG)
### (Breach of Contract)

62. Plaintiff incorporates by this reference the allegations contained in all of the preceding paragraphs as if fully set forth herein.

63. The Parties entered into an authorized dealer agreement.

64. Defendant represented and promised to Plaintiff not to compete against Plaintiff with respect to Caracole furniture sold by Plaintiff. This representation and promise became part of the parties' course of dealing and agreement, and was observed by Defendant, to the best of Plaintiff's knowledge until 2016.

65. Defendant made the above mentioned representations for its own benefit to assure Plaintiff's loyalty as well as to induce Plaintiff's best and extra efforts in performance of the parties' agreement.

66. Plaintiff's belief upon the above mentioned representations is reflected by the amount of time and expense Plaintiff incurred in selling Caracole products at their retail store.

67.     Plaintiff has complied with all the terms and onligations under the parties entire contract and agreement, course of dealing, industry practices , the parties understandings, and Defendant's representations and promises.

68.     Plaintiff has been damaged by Defendant's breach of entire contract and agreement. Such damages include loss of profits, excessive inventory cost, loss of revenue, deterioration of its business enterprise, and other incidental and consequential damages.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as follows:

1.      Adjudge and decree that Defendant CARACOLE has breached its agreements and contract with Plaintiff

2.      For an award of damages in an amount in excess of $15,000.00, the exact amount to be proven at trial;

3.      Issue a permanent order, restraining and enjoining Defendants CARACOLE, WAYFAIR and PERIGOLD its agents and employees, and all persons active in concert or participation who receive actual notice of the injunction and order by personal service or otherwise, from continuing the unlawful acts and conduct,as described above.

4.      For an award in the maximum amount as allowed in NRS 598A.210;

5.      For an award of punitive damages, in an amount to be proven at trial;

6.      For an award of pre-judgment and post-judgment interest on the amounts found owing to Plaintiff, from the date such amount became due, at the highest rate allowed by law, as applicable;

7.      For an award of attorneys' fees pursuant to contract or law, as applicable;

8.  For an award of costs, including without limitation expert witness fees; and

9.  For such other and further relief as to the Court deems just and proper.

Dated this __22nd__ day of August, 2019

                                                 CHATTAH LAW GROUP

                                              /s/ SIGAL CHATTAH
                                              SIGAL CHATTAH, ESQ.
                                              NV Bar No.: 8264
                                              CHATTAH LAW GROUP
                                              5875 S. Rainbow Blvd. #204
                                              Las Vegas, Nevada 89101
                                              Chattahlaw@gmail.com
                                              (702) 360-6200
                                              (702) 643-6292
                                              Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby Certify that on the 22nd day of August, 2019 I caused the foregoing AMENDED COMPLAINT to be electronically served to all registered parties on the Electronic CMECF service.

                     /s/
An Agent of Chattah Law Group