Lisa Wiltshire Alstead (NSBN 10470)
Laura Jacobsen (NSBN 13699)
MCDONALD CARANO LLP
100 West Liberty Street, 10th Floor
Reno, NV 89501
Telephone: (775) 788-2000
Facsimile: (775) 788-2020
lalstead@mcdonaldcarano.com
ljacobsen@mcdonaldcarano.com

*Attorneys for Defendant/Counterclaimant
Schnadig International Corp.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| FURNITURE ROYAL, INC., a Nevada Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SCHNADIG INTERNATIONAL CORP., d/b/a CARACOLE, a North Carolina Corporation,<br><br>Defendant.<br>___<br>SCHNADIG INTERNATIONAL CORP., d/b/a CARACOLE, a North Carolina Corporation,<br><br>Counterclaimant,<br><br>vs.<br><br>FURNITURE ROYAL, INC., a Nevada Corporation,<br><br>Counterdefendant. | CASE NO.: 2:18-cv-00318-JCM-DJA<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS** |

Defendant SCHNADIG INTERNATIONAL CORP. d/b/a CARACOLE ("Schnadig"), by and through its attorneys at the law firm of McDonald Carano LLP, hereby moves for summary judgment (the "Motion") on Plaintiff FURNITURE ROYAL, INC.'s ("Furniture Royal") claims in its Amended Complaint. Schnadig's Motion is supported by the following points and authorities, the Declarations of Lenwood Rich and Lisa Wiltshire Alstead, the exhibits attached hereto, the pleadings and papers on file with the Court, and any oral argument that the Court may entertain.

## **POINTS AND AUTHORITIES**

### I.   INTRODUCTION AND BACKGROUND

Schnadig is a global company that designs, manufactures, and sells wholesale home furnishings. Schnadig has five distinctive portfolios including its Caracole® line. Furniture Royal is a brick and mortar furniture store located in Las Vegas that purchases wholesale products from Schnadig, including home furnishings from the Caracole® line, to sell to consumers at retail.

Dissatisfied with the growth of online retailing, which has brought consumers better pricing for similar products, Furniture Royal filed claims against Wayfair, Inc. ("Wayfair"), a leading online furniture retailer, and Schnadig for federal antitrust violations and intertwined state law causes of action, seeking damages exceeding $1 million.

Following an order granting Schnadig's Motion to Dismiss, all of Furniture Royal's antitrust claims, including those against Wayfair, were dismissed. Notwithstanding, Furniture Royal's Amended Complaint filed on August 23, 2019, still contains numerous allegations related to the dismissed claims and are irrelevant to the remaining fraudulent misrepresentation and breach of contract claims. (*See* ECF No. 53.)

Schnadig has also filed a separate motion for summary judgment against Furniture Royal on Schnadig's breach of contract counterclaim based on the credit agreement between the parties. (ECF No. 59.) That motion is pending before the Court and seeks damages in the amount of $37,710.25.

Schnadig now moves this Court for summary judgment on Furniture Royal's remaining fraudulent misrepresentation and breach of contract claims, in Schnadig's favor, as the claims are

not supported by admissible evidence and are negated by the undisputed evidence cited herein. As such, judgment in Schnadig's favor is appropriate as a matter of law.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56-1.

### A.   Schnadig's Business Relationship With Furniture Royal.

Schnadig sold furniture, including furniture from its Caracole® line, to Furniture Royal pursuant to the Credit Application entered into by Furniture Royal and Schnadig on March 23, 2010. (Credit Application, **Ex. 1** hereto; Declaration of Lenwood Rich ("Rich Decl."), **Ex. 2** hereto, at ¶ 5.)  From 2010 through 2017, the parties' course of business with furniture orders, invoicing, and payment has been generally, but not always, in accordance with the terms of the Credit Application as amended. (Rich Decl. ¶ 6.)  Furniture Royal, while an approved retailer, would place orders for furniture directly with Schnadig, through Schnadig's local sales representatives and using Schnadig's online order entry portal, "Furnishweb."  (*Id.* ¶ 7.)  After the order is received and accepted, the furniture is shipped and an invoice issued to the retailer. (*Id.* ¶ 8.)

Over the course of the parties' relationship, on multiple occasions Furniture Royal failed to pay invoices under the net payment terms of the Credit Application and was put on a "credit hold." (*Id.* ¶ 9.)   Ultimately, in 2017, following failure to pay five invoices, despite demand, Furniture Royal's rights as an approved retailer were revoked, it was prohibited from purchasing furniture online through "Furnishweb", and the account was referred to Schnadig's credit insurance carrier for collections. (*Id.* ¶ 10.)  To date, Furniture Royal owes Schnadig $37,710.25 plus interest and fees for past due invoices.  (*Id.*)

With respect to its business model, Schnadig does not sell any products directly to consumers.  (Rich Decl. ¶ 11.)   Rather, Schnadig sells its products at wholesale to dealers and retailers such as Furniture Royal, Wayfair, and others, who then re-sell Schnadig products at retail directly to consumers.  (*Id.* ¶ 12.)   Both Furniture Royal and Wayfair are wholesale customers of Schnadig in that they purchase Schnadig's products at wholesale and re-sell them at retail to consumers.  (*Id.* ¶ 13.)   Both Furniture Royal and Wayfair purchase products from Schnadig's

Caracole® line. (*Id.*) Wayfair does not pay and has not paid Schnadig lower prices for Schnadig products than Furniture Royal pays Schnadig for identical products. (*Id.* ¶ 14.) In fact, the opposite is true. Furniture Royal received Schnadig's products at lower prices than were charged to Wayfair. (*Id.*)

Further, Schnadig made no intentional misleading or untruthful representations to Furniture Royal or Israel Salei, an officer of Furniture Royal with whom Schandig interfaced, to the effect that Schnadig was not competing against Furniture Royal with respect to Caracole® furniture sold by Furniture Royal when in fact Schnadig was selling Caracole® products directly to consumers. (Rich Decl. ¶¶ 15-17.) Nor did Schnadig ever make any statements to Furniture Royal or Israel Salei regarding offering any special pricing on its furniture to consumers or sales to consumers directly. (*Id.*) While the parties did over the course of business in 2014 and 2017 discuss the ***possibility*** of an exclusive agreement for Furniture Royal on the Caracole® line and Schnadig's requirements therefore, they never actually entered into an exclusive agreement with respect to the Caracole® line in Las Vegas because Furniture Royal was not approved by Schnadig as a "To-The-Trade" or "TTT" showroom. (*Id.* ¶¶ 18-19; *see also* **Ex. 3** (June 17, 2014 email explaining exclusivity requirements); **Ex. 4** (draft Agreement Regarding Meeting with Furniture Royal – Israel Salei – February 22, 2017).) At no time did Furniture Royal and Schnadig enter into an exclusive agreement, including the draft February 22, 2017 agreement, during their business relationship or otherwise. (Rich Decl. ¶¶ 18-20.)

  **B.** **Wayfair is a Retailer, *Not* an Advertising Platform, for Direct Customer Sales.**

While Wayfair is no longer a party to this lawsuit based on this Court's Order granting in part and denying in part Schnadig's Motion to Dismiss (ECF No. 31), it is undisputed that Wayfair, like Furniture Royal, is a retailer who sells furniture at retail. As detailed in Wayfair's Motion for Rule 11 Sanctions (ECF No. 11), Furniture Royal's premise that Wayfair is merely an "advertising platform" that permits Caracole® to sell its furniture directly to customers through Wayfair's websites is false. (ECF No. 11 at 2.) Rather, as recognized by Wayfair's "About Wayfair" section on wayfair.com, the company has been awarded a number of *retail* awards such as "Best Retail

App" from MediaPost, "Fastest Growing Retailer," and "Hot 100 Most Innovative Retailers" from Internet Retailer. (ECF No. 11-3.)[1] Likewise, Wayfair also operates as a retailer through perigold.com, which is the online store where Caracole® products are sold. (ECF No. 11 at 3.) Perigold.com's FAQ section answers the question "Do you have any store locations?" with "We are an online only retailer." (ECF No. 11-4.) Wayfair's and Perigold's retail Terms of Use explain that if there is a sale on product, it is *Wayfair* and not Schnadig, that is offering product at a discounted price. (ECF 11-6.) Finally, Wayfair's Annual Report filed with the Securities and Exchange Commission makes clear it is a retailer. (ECF 11-6.)

### C. Furniture Royal's Discovery Responses and Disclosures Do Not Support the Claims Alleged.

On June 22, 2019, Furniture Royal provided responses to Schnadig's First Set of Requests for Production of Documents propounded by Schnadig regarding the breach of contract claim. (*See* Plaintiff Furniture Royal, Inc.'s Responses to Defendant's Schnadig Intl. Corp's Request for Production of Documents, **Ex. 5** hereto.)[2]

Plaintiff was asked to "produce all documents and communications that evidence 'the parties entire contract and agreement' as alleged in the Complaint at paragraph 100 [paragraph 67 in the Amended Complaint]." (Ex. 5, Req. No. 5.) In response, Furniture Royal provided no documents. (*See id.* at Response to Req. No. 5.) Plaintiff was also asked to "produce all documents and communications that evidence the parties' 'course of dealing' as alleged in the

---

[1] Wayfair's records attached to its Motion for Rule 11 Sanctions include printouts of information published on its wayfair.com and perigold.com websites and an excerpt from its 2018 Form 10-K filing with the Securities and Exchange Commission. These documents are admissible as self-authenticating documents pursuant to FRE 902, or alternatively, Schnadig requests that the Court take judicial notice of these documents pursuant to FRE 201, as these documents can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

[2] Furniture Royal also provided bare-bone responses to interrogatories signed by its attorney but failed to provide a verification by the company and as such those responses are inadmissible evidence and constitute unverified allegations. *See e.g., Henderson v. Nevada Dept. of Corrections*, No. 2-16-CV00276-JAD-CWH, 2019 WL 332397, *3 (D. Nev. 2019); *National Default Servicing Corp. v. I.R.S.*, No. 2:13-CV-01311-RFB, 2015 WL 1549269, *1, 115 A.F.T.R.2d 2015-1623, 2015-1623 (D. Nev. 2015); *Overton v. City of Harvey*, 29 F. Supp. 2d 894, 901 (N.D. Ill. 1998) (the court would not consider interrogatory answers signed by the party's attorney, rather than the party itself, and which were not verified, and therefore struck this exhibit to the motion for summary judgment).

Complaint at paragraph 100 [paragraph 67 in the amended Complaint]." (Ex. 5, Req. No. 6.) Again, no documents were produced in response to this request for production. (*See id.* at Response to Req. No. 6.) Furniture Royal was asked to "produce all documents and communications that evidence the 'authorized dealer agreement' as alleged in the Complaint at paragraph 96 [paragraph 63 in the Amended Complaint]" to be the contract the parties entered into. (Ex. 5, Req. No. 7.)  In response, no specific document was identified; rather, Furniture Royal provided a generic response of "See Plaintiff's First Supplemental Disclosures." (*See id.*, Response to Req. No. 7.)

Similarly, no documents or communications evidencing "industry practices," the "parties' understandings," "Defendant's representations and promises," referenced in the Complaint at paragraph 100 [Amended Complaint paragraph 67] were provided. (Ex. 5 at Reqs. Nos. 8-10, Responses to Reqs. Nos. 8-10.)  In addition, when asked to "produce all documents and communications that evidence the Defendant's breach of 'express and implied agreements' as alleged at paragraph 21 of the Complaint [paragraph 34 of Amended Complaint]", no documents were produced.  (Ex. 5, Req. No. 11, Response to Req. No. 11.)

Furniture Royal was also asked to produce all documents and communications evidencing that Schnadig was selling furniture to consumers at prices below retail pricing and directly to consumers at reduced prices by and through online advertising platforms.  (Ex. 5, Reqs. Nos. 12, 13.)  Again, Furniture Royal did not identify or produce any documents.  (Ex. 3, Responses to Reqs. Nos. 12, 13.) Furniture Royal was also asked to produce all documents and communications evidencing the allegation that "Defendant represented and promised to Plaintiff not to compete against Plaintiff with respect to Caracole furniture sold by Plaintiff" under paragraph 97 of the Complaint [Amended Complaint paragraph 64]. (Ex. 5, Req. No. 15.) No documents were produced. (Response to Req. No. 15.)[3]

---

[3] In any event, even if this representation had been made, Schnadig never competed with Furniture Royal because Schnadig never sold Caracole® furniture to consumers, as related above. (Rich Decl. ¶ 11.)

While minimal discovery responses were provided regarding the breach of contract claim, no discovery was produced to Schnadig or propounded by Furniture Royal as to its fraudulent misrepresentation claim after leave to file the Amended Complaint was allowed. (ECF No. 53, ECF No. 51; Declaration of Lisa Wiltshire Alstead ("Alstead Decl."), ¶ 6, attached hereto as **Ex. 6**.) This was despite the parties' agreement memorialized in the Amended Discovery Plan and Scheduling Order "to continue the discovery deadline by six months to allow for discovery on the new [fraudulent misrepresentation] claim" thereby establishing a continued discovery deadline of February 24, 2020. (ECF No. 56 at 2.) In fact, Furniture Royal did not conduct any discovery during this extended discovery period. (Alstead Decl. ¶ 7.)

No calculation of damages *by category* was ever disclosed for either claim by Furniture Royal during discovery despite the obligation to provide this information with initial disclosures. (*Id.* ¶ 8.) "Plaintiff Furniture Royal's Initial List of Witnesses and Documents Pursuant to FRCP 26(f)" dated February 7, 2019 provided no section on damages as required by FRCP 26(f). (*See* **Ex. 7** hereto; Alstead Decl. ¶ 9.) "Plaintiff Furniture Royal's Supplemental List of Witnesses and Documents Pursuant to FRCP 26(f)" dated May 22, 2019, states a "Computation of Damages" of "[a]pproximately $100,000.00 USD is attributed as compensatory damages including expectation and consequential damages as a result of Schnadig's actions," with no breakdown by category. (*See* **Ex. 8** hereto; Alstead Decl. ¶ 10.)

Finally, no relevant documents were produced by Furniture Royal in initial or supplemental disclosures to support either of the two claims asserted; but rather, the only documents identified by reference by Furniture Royal to support its claims were those attached to Furniture Royal's Opposition to Wayfair's Rule 11 Motion for Sanctions and specific to Wayfair, not Schnadig. (Exs. 7 and 8.)

**III.  LEGAL ARGUMENT**

  **A.  Legal Standard**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its initial burden, "the moving party must either produce evidence negating an essential element

of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The moving party may thus bear its burden simply by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). That is, "[a] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Grinage v. Leyba*, No. 2:06-CV-0835-RLH-GWF, 2008 WL 199720, at * (D. Nev. Jan. 17, 2008) (citing *Celotex Corp.*, 477 U.S. at 323).

When the moving party meets its burden, the nonmoving party "may not rely on the mere allegations in the pleadings in order to preclude summary judgment …[,]" but instead must produce "significant probative evidence" supporting those allegations. *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citations omitted). The nonmoving party "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact-finder could find in his favor. *Finn v. City of Boulder City*, No 2:14-cv-01835-JAD-GWF, 2018 WL 473001, at *3 (D. Nev. Jan. 17, 2018).

**B.   Furniture Royal Cannot Establish a Fraudulent Misrepresentation Claim as a Matter of Law.**

Under Nevada law, the elements of fraudulent misrepresentation are: (1) a false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation. *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998) (internal citation omitted). These elements must be established by Furniture Royal with clear and convincing evidence. *See Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1155 (9th Cir. 2005) (citing *Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992)).

In the Court's Order granting in part and denying in part Schnadig's Motion to Dismiss, the Court acknowledged Rule 9's requirement that fraud must be stated with particularity. (ECF No. 31 at 7); *see also* Fed. R. Civ. P. 9(b). The Court also recognized the requirement that a plaintiff must allege "the who, what, when, where, and how of the misconduct charged." (ECF No. 31 at 7) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097, 1106 (9th Cir. 2003)). The Court also recognized that Furniture Royal's "bare-bone allegations fail to provide the 'the who, what, when, where, and how of the misconduct charged.'" (*Id.*)  As such, Furniture Royal's fraudulent misrepresentation claim was dismissed without prejudice.

In the Amended Complaint, it is unclear what, ***if any***, facts were added by Furniture Royal to address the pleading deficiencies. (*See* ECF No. 53.) The Amended Complaint again fails to address the "who, what, when, where, and how" of the alleged fraudulent misrepresentation, what is false or misleading about a statement, and why it was false. *See Valencia v. Sharp Elec. Corp.*, 561 F. App'x 591, 593 (9th Cir. 2014); *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (9th Cir. 2002).

In fact, after the Court entered its July 30, 2019 Report and Recommendation allowing Furniture Royal to assert a fraudulent misrepresentation claim in addition to its breach of contract claim, the parties stipulated "to continue the discovery deadline by six months to allow for discovery on the new [fraudulent misrepresentation] claim" thereby establishing a continued discovery deadline of February 24, 2020. (ECF No. 56 at 2.) No discovery was propounded or produced by Furniture Royal on the fraudulent misrepresentation claim from the time of the July 30, 2019 Report and Recommendation allowed leave to file the Amended Complaint after the Amended Complaint was filed on August 23, 2019, or before the extended discovery cutoff date ran on February 24, 2020. (Alstead Decl. ¶¶ 6, 11.)

Because Furniture has produced ***no evidence*** on its fraudulent misrepresentation claim under the Amended Complaint or of the "who, what, when, where, and how" of the alleged misrepresentations, it is undisputed that Furniture Royal cannot satisfy the clear and convincing evidence requirements to establish the elements of its fraudulent misrepresentation claim. On this basis alone, summary judgment should be granted in Schnadig's favor.

Further, should the Court look past this failure of Furniture Royal to disclose any evidence in support of the fraudulent misrepresentations, the **_undisputed_** material facts establish that Schnadig made no fraudulent misrepresentations. Specifically, the Amended Complaint[4] contains a section entitled "The Fraud" yet **_no_** fraudulent misrepresentations are alleged in this section. (ECF No. 53, Am. Compl. ¶¶ 37-41.) Rather, the basis of the allegations in the "The Fraud" section of the Amended Complaint relate entirely to alleged antitrust violations and are therefore irrelevant following the order dismissing all antitrust claims. (*See id.* (containing allegations of price discrimination, price competition, and relevant markets); *see also* ECF No. 31 (dismissing the antitrust claims)).

The only allegations related to Furniture Royal's fraudulent misrepresentation claim states as follows: (1) "Defendant falsely represented to Plaintiff that it did not offer any special pricing on its furniture to consumers or sell to consumers directly. Specifically, Plaintiffs inquired whether there were special pricing and Defendants denied such actions;" and, (2) "It was never conveyed to Plaintiffs, at any time that the brand would ever be marketed on an online advertising platform and for direct sale through same." (ECF No. 53, Am. Compl. ¶¶ 50, 52.) Furniture Royal cannot satisfy the first element of its fraudulent misrepresentation claim as these alleged statements were never made, nor could any omission have occurred as to direct sales when Schnadig does not sell its product directly to consumers.

The undisputed Declaration of Lenwood Rich, the Vice President of Sales for Schnadig at all times relevant to the claim, establishes that not only were these alleged fraudulent misrepresentations **_never made_** but also that Furniture Royal has a mistaken perception of Schnadig's business. Specifically, Schnadig **_does not_** sell products to consumers directly. (Rich Decl. ¶ 11.) Thus, even if the representation were made, it was not false. While it remains unknown **_who_** Furniture Royal claims made the alleged representations, **_when_** Furniture Royal

---

[4] While Schnadig recognizes a motion for summary judgment is evaluated under a different standard than a motion to dismiss or motion for judgment on the pleadings, because Furniture Royal neither produced nor propounded any discovery on its fraudulent misrepresentation claim, this Motion cites to the Amended Complaint as the only guidance as to what alleged fraudulent misrepresentation Furniture Royal asserted to have occurred. Of course the allegations are not admissible evidence upon which Furniture Royal may rely.

claims the alleged representations were made, or *what* Furniture Royal alleges was exactly said, Mr. Rich was the Vice President of Sales and manager of the relationship with Furniture Royal. (Rich Decl. ¶ 4.) Mr. Rich states as to the alleged direct sales to consumers:

- "Schnadig does not sell any products directly to consumers." (Rich Decl. ¶ 11.)

- "Rather, Schnadig sells its product at wholesale to approved dealers and retailers such as Furniture Royal, Wayfair, and others, who then re-sell Schnadig's products at retail directly to consumers." (*Id.* ¶ 12.)

- "Both Furniture Royal and Wayfair were wholesale customers of Schnadig, in that each purchased Schnadig's product at wholesale and re-sold them to retail consumers. Both Furniture Royal and Wayfair purchased products from Schnadig's Caracole® line." (*Id.* ¶ 13.)

- "To my knowledge, Wayfair does not pay and has not paid Schnadig lower prices for Schnadig's products than Furniture Royal paid Schnadig for identical products. In fact, the opposite is true. Furniture Royal purchased Schnadig's products at *lower prices* than were charged to Wayfair." (*Id.* ¶ 14) (emphasis added).

- "Further, as the Vice President of Sales, neither myself nor any Schnadig employee to my knowledge, made any intentionally misleading or untruthful representations to Israel Salei or anyone else at Furniture Royal to the effect that Schnadig was not competing against Furniture Royal with respect to Caracole® furniture sold by Furniture Royal when in fact Schnadig was selling Caracole® products directly to consumers. ***Schnadig has not and does not sell its products directly to consumers***. Nor did I, or any Schnadig employee to my knowledge, ever make any statement to Israel Salei or anyone else at Furniture Royal that Schnadig offered special pricing for Schnadig's products being sold by Schnadig to consumers directly. ***Again, Schnadig has not and does not sell its products directly to consumers.***" (*Id.* ¶ 15) (emphasis added).

- "Additionally, neither myself nor any employee of Schnadig, to my knowledge, ever discussed with Israel Salei or anyone else at Furniture Royal, marketing the Caracole® brand for direct to consumer sales." (*Id.* ¶ 16.)

Mr. Rich's sworn Declaration, which constitutes admissible evidence, states unequivocally that Schnadig does not sell furniture directly to consumers. (*Id.*, ¶¶ 12-16.) This is likewise confirmed by Wayfair in its Motion for Rule 11 Sanctions where it refutes the allegation that Caracole® "advertises on internet platforms such as Wayfair.com, Perigold.com [sic] to sell directly to consumers by placing furniture on these advertising platform sites" by stating, "Wayfair operates as a retailer, purchasing goods from Caracole and then selling them to consumers through its e-commerce website, including Perigold.com." (ECF No. 11 at 8-9.) This statement is

supported by the printouts from the wayfair.com and perigold.com websites and Wayfair's Annual Report filed with the SEC which makes clear Wayfair operates a retailer and does not permit third parties to make sales through its website. (ECF No. 11 at 9; ECF Nos. 11-3, 11-4, 11-6, 11-7, 11-8.)

Nor does Schnadig sell furniture to other Schnadig customers named in the Amended Complaint – *i.e.*, Wayfair and Perigold – for a lower or "special" price (which is less than the pricing charged to Furniture Royal). (Rich Decl. ¶ 14.) To the contrary, Schnadig charges Wayfair a higher price for the same line of furniture it sells to Furniture Royal. (*Id.*) Finally, neither Mr. Rich, nor any employee to his knowledge, made *any* statements to Mr. Salei or Furniture Royal promising not to "compete" against Furniture Royal with respect to Schnadig's Caracole® line, direct sales to consumers, special pricing, or marketing the Caracole® brand for direct to consumer sales. (*Id.* ¶¶ 15-16.) Indeed, the existence of any such statement is belied by the fact that Schnadig does not and has sold its Caracole® brand—or any other brand—directly to consumers. (*Id.* ¶ 11.)

As such, based on the undisputed evidence, Furniture Royal cannot establish the first element of its fraudulent misrepresentation claim: no statements were made by Mr. Rich or any known employee to Furniture Royal as alleged. Further, it is ***illogical*** that any such statements would be made or information withheld from Furniture Royal regarding direct sales to consumers ***when Schnadig does not sell directly to consumers.***

As to the second element of the fraudulent misrepresentation claim – knowledge or belief that representation was false, or insufficient information for making a representation – this element likewise cannot be proven where all Furniture Royal employees, including Mr. Rich, know that Schnadig does not sell directly to consumers. (*Id.*, ¶¶ 12-16.) Thus, even if Schnadig or any of its employees represented to Furniture Royal that Schnadig did not sell directly to consumers or that it would not compete with Furniture Royal, any such statement would be true. Likewise, any statement that there was no special pricing was also true because Schnadig did not sell directly to consumers and because Schnadig charged Wayfair a higher price than it charged to Furniture Royal.

As to the third element – intent to induce Plaintiff to act or refrain from acting upon the misrepresentation – Furniture Royal likewise cannot offer any evidence to prove Schnadig's intent for Furniture Royal to act or refrain from action. The Amended Complaint alleges that the intent behind these alleged statements was to induce Furniture Royal to continue to sell Caracole® products and that it relied on representations that prices were fixed. (ECF No. 53, Am. Compl. ¶¶ 58-59.) But with Schnadig selling furniture to Furniture Royal at prices lower than those paid by Wayfair, there could be no intent to have Furniture Royal pay fixed or higher prices than Wayfair. (*See* Rich Decl. ¶ 14.)

Finally, while Furniture Royal alleges damages in excess of $1 million, this fourth element likewise cannot be established by the evidence. Again, Schnadig offered Furniture Royal *lower prices* than Wayfair and Schnadig never sold directly to consumers. (*Id.*) As such, not only could Furniture Royal not suffer damages, it actually **benefited** from receiving lower prices than other retailers. Further, Furniture Royal never disclosed a calculation of fraudulent misrepresentation damages nor produced any discovery evidencing any damages whatsoever. (Alstead Decl. ¶¶ 9-10; Ex. 7; Ex. 8.)

In sum, the undisputed evidence establishes that there is no genuine issue of material fact thereby negating the elements of the fraudulent misrepresentation claim. Further, there is a complete absence of any evidence to support Furniture Royal's claim. As such, summary judgment should be entered a matter of law in Schnadig's favor on the fraudulent misrepresentation claim.

### C. Furniture Royal Cannot Establish a Breach of Contract as a Matter of Law.

Under Nevada law, a breach of contract is "a material failure of performance of a duty arising under or imposed by agreement." *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987). A claim for breach of contract requires that a plaintiff demonstrate the following elements: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damages as a result of the breach. *Cohen-Breen v. Gray TV Grp., Inc.*, 661 F. Supp. 2d 1158, 1171 (D. Nev. 2009); *Buesing Corp. v. Helix Elec. of Nev., LLC*, Case No. 2:16-CV-1439 JCM (NJK), 2019 WL 1290867, at *3 (D. Nev. Mar. 20, 2019).

Here, Furniture Royal alleges that there were "express and implied agreements" between the parties. (ECF No. 53, Am. Compl. ¶ 34.) Pursuant to these agreements, Furniture Royal alleges that two breaches occurred:

> (1) "Between the years of 2010 through 2013, CARACOLE representatives assured Plaintiff that Plaintiff would be the exclusive distributor in Las Vegas of CARACOLE products" and "initially breached the exclusivity by first selling said products on the website platform onekingslane.com;" and

> (2) "CARACOLE then expanded this breach and fraud by selling their products on Perigold/Wayfair.com, moving from a smaller platform like onekingslane.com to Perigold.com, a much larger internet platform" or "CARACOLE breached it's express and implied agreements with Plaintiff's business by offering to and agreeing with PERIGOLD and WAYFAIR to sell CARACOLE furniture directly to the consumer."

(ECF No. 53, Am. Compl. at ¶¶ 20-22, 34.)

As to the first element, a valid contract, Furniture Royal *fails* to identify a valid contract between the parties. The only known contract is the Credit Application attached to this motion as Exhibit 1. (*See* Ex. 1.) The Amended Complaint refers to the agreement as "an authorized dealer agreement." (ECF No. 53, Am. Compl. ¶ 62.) However, no "authorized dealer contract" between Schnadig and Furniture Royal has been produced in discovery. Plaintiff was asked to "produce all documents and communications that evidence 'the parties entire contract and agreement' as alleged in the Complaint at paragraph 100 [paragraph 67 in the Amended Complaint]." (Ex. 5, Req. No. 5.) In response, Furniture Royal provided no documents. (*See id.* at Response to Req. No. 5.) Furniture Royal was also asked to "produce all documents and communications that evidence the 'authorized dealer agreement' as alleged in the Complaint at paragraph 96 [paragraph 63 in the Amended Complaint]" to be the contract the parties entered into. (Ex. 5, Request No. 7.) In response, no specific document was identified but rather a generic response of "See Plaintiff's First Supplemental Disclosures" was provided. (*See id.*, Response to Req. No. 7.) But Furniture Royal never identified or produced any "authorized dealer agreement" or other agreement in disclosures, in response to discovery requests, or otherwise. (*See* Exs. 5, 7, and 8.)

Thus, there is absolutely no evidence whatsoever to support the allegation that the parties entered into a so-called "authorized dealer agreement." Because there is a complete failure of proof on this element, all other facts are immaterial and Schnadig is entitled to judgment as a

1  matter of law. As such, with no evidence of a valid "authorized dealer agreement" or any
2  agreement between the parties, Furniture Royal cannot establish this required element as there is
3  no evidence of such an agreement. The undisputed Rich Declaration likewise confirms there was
4  no "exclusivity" agreement either. Rather, the only known agreement is the Credit Application
5  signed by Furniture Royal. (Ex. 1.)

6  With respect to a breach, as identified above with the fraudulent misrepresentation claim,
7  Schnadig **_does not_** sell products directly to consumers. (Rich Decl., ¶¶ 12-16.) Further, as noted
8  by Wayfair, both Wayfair and Perigold are "retailers" **_not_** "consumers." (ECF No. 11 at 3; ECF
9  Nos. 11-3, 11-4, 11-6, 11-7, 11-8.) Nor was there any discussion between Schnadig and Furniture
10 Royal between 2010 and 2013 regarding exclusivity. (*See* Ex. 3) (containing email
11 correspondence regarding exclusivity in *2014*). Because Schnadig never approved Furniture
12 Royal as a To-The-Trade showroom, exclusivity with respect to the Caracole® product line in Las
13 Vegas was never offered. (Rich Decl. ¶¶ 18-19; Ex. 4.) Furniture Royal has disclosed no
14 documentary evidence or sworn testimony evidencing a breach of an authorized dealer agreement.
15 As to exclusivity, the undisputed evidence of exclusivity confirms it was not discussed until 2014,
16 and in 2017 there was a draft agreement but exclusivity *was never approved* by Schnadig. (*Id.*)
17 Based on the undisputed evidence, and abcence of evidence from Furniture Royal, the breach of
18 evidence element is negated.

19 Last, Furniture Royal's third element is the damages resulting from the breach. Furniture
20 Royal produced no evidence in discovery of damages and produced no calculation of damages in
21 its disclosures. (Alstead Decl. ¶¶ 8-10; Ex. 7; Ex. 8.) Specifically, "Plaintiff Furniture Royal's
22 Initial List of Witnesses and Documents Pursuant to FRCP 26(f)" dated February 7, 2019,
23 provides no damages calculation. (Ex. 7.) "Plaintiff Furniture Royal's Supplemental List of
24 Witnesses and Documents Pursuant to FRCP 26(f)" dated May 22, 2019, states a "Computation
25 of Damages" of "[a]pproximately $100,000.00 USD is attributed as compensatory damages
26 including expectation and consequential damages as a result of Schnadig's actions." (Ex. 8.) No
27 evidence to support these alleged damages or breakdown by category was ever produced. (Alstead
28 Decl. ¶¶ 8-10; Ex. 7; Ex. 8.)

In sum, Furniture Royal has done nothing to develop any evidence to support its blanket allegations on damages of $100,000.00 in disclosures and $1 million in the Amended Complaint. (*See* Exs. 7 and 8.; ECF No. 53.)  These alleged facts are unsupported by admissible evidence as required by FRCP 56.  The only admissible and undisputed evidence shows that Furniture Royal actually **benefited** from, and did not suffer damages, as a result of receiving products at lower prices than those received by other retailers such as Wayfair.  (Rich Decl. ¶ 14.)

For these reasons, the elements of Furniture Royal's breach of contract claim are negated and unsupported by admissible evidence.  Summary judgment as a matter of law should be entered in Schnadig's favor on this claim.

## IV. CONCLUSION

It is respectfully requested that summary judgment be granted in Schnadig's favor, against Furniture Royal, on Furniture Royal's fraudulent misrepresentation and breach of contract claims.

DATED this 25th day of March 2020.

McDONALD CARANO LLP

By: */s/ Lisa Wiltshire Alstead*
Lisa Wiltshire Alstead (#10470)
Laura R. Jacobsen (#13699)
100 W. Liberty St., 10th Floor
Reno, NV 89501
lalstead@mcdonaldcarano.com
ljacobsen@mcdonaldcarano.com

*Attorneys for Defendant/Counterclaimant Schnadig International Corp.*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of McDonald Carano LLP and that on the 25th day of March 2020, a true and correct copy of the foregoing **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS** was electronically filed with the Clerk of the Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification. A courtesy copy of the exhibits to be filed under seal were also emailed to counsel for Furniture Royal, Inc. at sigal@thegoodlawyerlv.com and hard copies also mailed to counsel at:

Sigal Chattah
Chattah Law Group
5875 S. Rainbow Blvd., Ste. 204
Las Vegas, NV 89118

/s/ *Angela Shoults*
An Employee of McDonald Carano LLP

4829-3138-8088, v. 1

**INDEX OF EXHIBITS**

| EXHIBIT | DESCRIPTION | NO. OF PAGES |
|---|---|---|
| 1. | Schnadig Credit Application | 2 |
| 2. | Declaration of Lenwood Rich | 5 |
| 3. | Email dated June 17, 2014 Explaining Exclusivity Requirements | 3 |
| 4. | Draft Agreement dated February 22, 2017 Regarding Meeting with Furniture Royal | 2 |
| 5. | Plaintiff Furniture Royal, Inc.'s Responses to Defendant's Schnadig Intl. Corp's Request for Production of Documents | 16 |
| 6. | Declaration of Lisa Wiltshire Alstead in Support of Defendant's Motion for Summary Judgment on Plaintiff's Claims | 4 |
| 7. | Plaintiff Furniture Royal's Initial List of Witnesses and Documents Pursuant to FRCP26(f) | 4 |
| 8. | Plaintiff Furniture Royal's Supplemental List of Witnesses and Documents Pursuant to FRCP26(f) | 5 |

4829-3138-8088, v. 1